565 P.2d 1289

**SUNDOWN IMPORTS, INC., a corporation, Appellant,**

v.

**ARIZONA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, and Mercedes-Benz of North America, Inc., a corporation, Appellees.**

**No. 2 CA–CIV 2282.**

Court of Appeals of Arizona, Division 2.

March 14, 1977.

Rehearing Denied April 27, 1977.

Review Denied June 1, 1977.

Waterfall, Economidis, Caldwell & Hanshaw, P.C., by Peter Economidis, Tucson, for appellant.

Bruce E. Babbitt, Atty. Gen., by Donald Loeb, Asst. Atty. Gen., for appellee Ariz. Dept. of Transp.

Dushoff & Sacks by David C. Tierney, Phoenix, for appellee Mercedes-Benz.

HATHAWAY, Judge.

This is an appeal from a superior court judgment affirming the findings of an administrative hearing officer. The procedural aspects of this case may be outlined as follows. On July 25, 1975, appellee Mercedes-Benz of North America (hereinafter referred to as MBNA) notified appellant, Sundown Imports, Inc. that MBNA was terminating Sundown's franchise for sale of Mercedes-Benz automobiles. Appellant filed a timely Objection to Notice of Termination with the Arizona Department of Transportation pursuant to A.R.S. § 28–1304.02(E) and (F). On September 18–19, 1975, a hearing was held before the Arizona Department of Transportation. The hearing officer found that MBNA had good cause for terminating the franchise and that consent to the sale of the franchise had not been withheld unreasonably. A.R.S. § 28–1304.02(J)(1) and (N). Sundown Imports, Inc. sought review in the superior court pursuant to A.R.S. §§ 12–904 and 12–905. The court affirmed the administrative decision and Sundown appealed to this court as provided in A.R.S. § 12–913 and § 12–120.21.

At the administrative hearing, MBNA representatives gave three reasons for the decision to terminate the franchise. First and foremost, was the fact that a total change in management and ownership of the Tucson franchise had occurred without their knowledge or approval. Secondly, MBNA had a policy disapproving of long distance control of franchises. In this case, Sundown Imports, Inc. was owned and controlled by Steve Stiles, who already owned and managed a Mercedes franchise in Springfield, Oregon. Furthermore, he was also seeking approval for his takeover of a franchise in Spokane. The third objection of MBNA was made by Mr. Vince Laraia, Los Angeles zone manager. Mr. Laraia has responsibility for the Tucson franchise which lies in his zone and has the "major part" in deciding whether an ownership change should occur. He is the person who establishes policies for the Los Angeles zone. Mr. Laraia testified that "my policy is I don't like two dealers with Mercedes-Benz franchise within one zone of operation, or any one dealer with more than one dealership."

Sundown presents three questions for review. First, it argues that the trial court should have granted a trial de novo or should have permitted the introduction of additional evidence. Secondly, Sundown contends that the trial court should have permitted it to brief the issue of correctness of the administrative decision. The third issue raised on appeal is whether the trial judge was correct in affirming the administrative decision.

■ Appellant was not entitled to a trial de novo in the superior court. A trial de novo is not available unless a "trial de novo is demanded in the complaint or answer of a defendant other than the agency and if no hearing was held by the agency or the proceedings before the agency were not stenographically reported so that a transcript might be made." A.R.S. § 12–910(B). In this case, a two day hearing was held which was stenographically recorded and reported in two volumes of transcript. Appellant thus had no right to demand a trial de novo.

■ We further find that the trial court's refusal to allow introduction of additional evidence was not an abuse of discretion. New or additional evidence may be heard by the court only "in cases where in the discretion of the court justice demands the admission of such evidence." A.R.S. § 12–910(A). Also, A.R.S. § 12–911(A)(7) provides that "[t]he superior court may . . . * * * When a hearing has been held by the agency, remand for the purpose of taking additional evidence when from the state of the record of the administrative agency or otherwise it appears that such action is just."

The requested additional evidence consists of documents which appellant argues MBNA should have produced prior to the administrative hearing. Appellant argues that the additional documents are necessary for several reasons. Appellant seeks to determine whether MBNA has waived its requirement of prior written approval of a total change in franchise ownership by not requiring such approval for other franchises. Appellant also seeks the documents to determine whether other persons or entities own more than one dealership in the United States. Also, appellant wants documentation of Mr. Stiles' contacts with MBNA's San Francisco zone officials regarding the Tucson franchise.

We find no abuse of judicial discretion in refusing to permit appellant to obtain and introduce additional evidence. There was testimony at the administrative hearing which dealt with all of the above matters and appellant had an opportunity to cross-examine MBNA's witnesses. No objections were raised at the hearing as to lack of or inadequate opportunity to examine documents. Sundown claims that it did not have enough time to prepare for the hearing but its attorneys made no request for a continuance pursuant to A.R.S. § 28–1304.-02(G), although counsel knew as of September 11 that there would be a problem concerning documents.

▇ We affirm the trial judge's finding that the hearing officer did not abuse his discretion. It is well established that, when an administrative decision is appealed to the superior court pursuant to the Administrative Review Act, "The scope of the Superior Court's review is limited to deciding whether the administrative action was illegal, arbitrary, capricious, or involved an abuse of discretion." *Schade v. Arizona State Retirement System,* 109 Ariz. 396, 510 P.2d 42 (1973); *Welsh v. Arizona State Board of Accountancy,* 14 Ariz.App. 432, 484 P.2d 201 (1971). On appeal to this court, our duty is simply to "search the record to determine whether the evidence is of a substantial nature to support the lower court's decision." *Schade, supra; Welsh, supra.* We find the requisite evidentiary support.

A.R.S. § 28–1304.02(A) mandates that "Notwithstanding the terms . . . of any . . . franchise, no franchisor shall . . . terminate . . . any franchise unless the franchisor has good cause for termination . . .." A.R.S. § 28–1304.02(H) provides that "the franchisor has the burden of proof to establish that good cause exists to terminate . . . the franchise." § 28–1304.02(N) requires that, in determining good cause, the motor vehicle division must take into consideration the following factors:

"1. Amount of business transacted by the franchisee.

2. Investment necessarily made and obligations incurred by the franchisee in the performance of his part of the franchise.

3. Permanency of the investment.

4. Whether it is injurious to the public welfare for the business of the franchisee to be discontinued.

5. Whether the franchisee has adequate new motor vehicle facilities, equipment, parts and qualified management, sales and service personnel to reasonably provide consumer care for the new motor vehicles sold at retail by the franchisee and any other new motor vehicle of the same line-make.

6. Whether the franchisee refuses to honor warranties of the franchisor to be performed by the franchisee if the franchisor reimburses the franchisee for such warranty work performed by the franchisee.

7. Except as provided in subsection J of this section, failure by the franchisee to substantially comply with those requirements of the franchise which are determined by the assistant director for the motor vehicle division to be reasonable and material.

8. Except as provided in subsection J of this section, bad faith by the franchisee in complying with those terms of the franchise which are determined by the assistant director for the motor vehicle division to be reasonable and material."

The portion of A.R.S. § 28–1304.02 which has most significance in this case is subsection (J)(1) which states that "The change of ownership of the franchisee's dealership" does not constitute good cause for termination of a franchise. The statute, however, goes on to say: "This paragraph does not authorize any change in ownership which would have the effect of the sale of the franchise without the manufacturer's or distributor's consent. Such consent shall not be unreasonably withheld. The burden of establishing the reasonableness is on the franchisor." Thus, in deciding whether there was good cause to terminate the franchise, the hearing officer must determine whether MBNA's consent to the ownership change was unreasonably withheld.

The basic circumstances of the ownership change at issue are as follows. Stiles Enterprises, Inc. acquired the complete stock ownership of the Tucson dealership formerly known as Bill Edel Motors, Inc. The stockholders of Stiles Enterprises are Stephen Stiles and Richard Fredericks. The shareholders of Bill Edel Motors, Inc. were Bill Edel, his son and Ron Slyter. Mr. Slyter was the person who formerly managed the dealership and with whom Stiles

Enterprises negotiated its purchase. The acquisition by Stiles Enterprises was complete as of July 3, 1975. Before the acquisition had been accomplished, the name of the car dealership had been changed to Sundown Imports, Inc. and Stiles Enterprises had effected a total changeover in the management personnel of the dealership. On July 11, 1975, MBNA discovered that there had been a total transfer of ownership and management finalized on July 3.

■ There was substantial evidence before the hearing officer that the change of ownership occurred without the knowledge of the man who was primarily responsible for approving it, Mr. Vince Laraia, Los Angeles Zone Manager. This was thus not a situation where a potential franchisee applied to MBNA for a franchise and was turned down. Instead, an entire transformation in both ownership and management had already occurred before MBNA was notified. Appellant deems it significant that Mr. Stiles conversed with MBNA representatives in the San Francisco zone regarding his acquisition of the Tucson franchise and that Mr. Stiles and Mr. Fredericks dealt with an MBNA service representative who occasionally visited the Tucson dealership. These contacts, however, did not amount to a request for approval of the franchise. The San Francisco zone people had no authority over the Tucson dealership and thus had no reason to inquire as to whether Stiles Enterprises had followed proper procedures. The visiting service representative was concerned only with "mechanics' training, vehicles that need repair, dealership equipment" and had no authority to approve a change in ownership or management.

Mr. Laraia, the person directly responsible for approving such changes was unaware of them. A November 29, 1974, letter from Mr. Slyter to Mr. Laraia informed him that a possible change in stock ownership was contemplated. Mr. Slyter did not indicate that there would be a complete transfer but only that he would retain his stock and that his "position would remain the same as active dealer in the running of this corporation." The response from Mr. Laraia, despite appellant's contentions, does not indicate that MBNA had no objection to Stiles Enterprises as a new franchisee. The sentence relied upon by appellant must be examined in its entirety. MBNA stated, "We would raise no objection to the acquisition by Stiles Enterprises, Inc. of an *investment* interest in Bill Edel Motors, Inc. *if* . . . full operating management and control of the dealership operation in Tucson were vested in an acceptable General Manager with provisions that *no change in that management be made without the express written approval of Mercedes-Benz of North America, Inc.*" (Emphasis added) MBNA was not informed until the full transfer had taken place that more than a partial change in investors was contemplated. Mr. Stiles testified that he made no attempt to contact MBNA but that he was under the impression that Mr. Slyter kept MBNA advised of the transaction. He could not explain why he had this impression.

■ Appellant argues that MBNA should accept Stiles Enterprises as a franchisee because Stiles has succeeded in increasing sales and improving the community reputation of the franchise. Also, appellant has invested substantial sums of money in the dealership. These are indeed factors which should be considered. A.R.S. § 28–1304.-02(N)(2), (3), (4), (5). However, this is not a case where MBNA is terminating a long-standing relationship with a franchisee with whom MBNA had dealt for years. Instead, Stiles Enterprises is, in effect, forcing MBNA to accept a new franchisee which MBNA had no part in choosing. As suggested by appellees' argument at the administrative hearing, the franchise system becomes meaningless if franchisors lose the right to review potential franchisees and are forced to accept franchisees they did not choose. The statute is intended to protect a franchisee who relies on a long-standing course of dealing with a franchisor but should not be construed to encourage aspiring franchisees to conceal an acquisition of a dealership in order to compel the franchisor to deal with them.

MBNA presented further evidence to justify its action. Mr. Laraia and Mr. Armstrong, the Dealer Organization Manager, both testified that it was Mercedes-Benz' policy to discourage long distance control of dealerships. Stephen Stiles is a resident of Portland, Oregon and has been involved with an Oregon dealership for 11 years. Mr. Fredericks, the other shareholder in Stiles Enterprises, testified that he had relocated his family in Tucson and become a resident. He planned to remain in Tucson and manage the dealership. As vice-president and general manager, he would run the dealership. This arrangement might have been acceptable to MBNA had it been able to scrutinize it prior to the ownership change. It had no such opportunity, however, and there are aspects it might question. For example, Steve Stiles, who appears to be the dominant individual in Stiles Enterprises, might have been the person responsible for the "dramatic" improvement in dealership sales and reputation. Mr. Stiles testified that, after the change in management, he worked at the dealership 12–14 hours a day. He cannot continue to do this, however, since he is an Oregon resident, participates in management of an Oregon dealership and plans to acquire a Spokane dealership. Without his personal efforts, the Tucson franchise might not be so successful.

A further justification for termination of the Sundown franchise was stated by Mr. Laraia, who indicated that he has a personal policy against one person or entity controlling two or more dealerships. Appellant argues that this is his personal policy rather than company policy and that Stiles therefore should not be bound by it. However, Laraia does have policy-making power within his Los Angeles zone.

The third point raised by appellant, that the trial judge did not allow it to brief the merits of the administrative decision, does not require us to reverse. It had adequate opportunity to prepare its argument as appellees' motion for summary judgment was filed February 19, 1976, and the hearing on it was not held until April 5, 1976. Furthermore, appellant did in fact submit an opposition to appellees' motion on April 1, 1976.

 If there was error, it was harmless error since appellant has had ample opportunity to argue this case. Furthermore, it is unnecessary to consider this point since we find substantial evidence to support the trial judge's decision that the administrative officer did not abuse his discretion.

Affirmed.

HOWARD, C. J., and RICHMOND, J., concur.