707 P.2d 322

**Sharon L.R. MAXWELL, Plaintiff/Appellant,**

v.

**The CIVIL SERVICE COMMISSION OF the CITY OF TUCSON, Defendant/Appellee.**

**No. 2 CA CIV 5190.**

Court of Appeals of Arizona, Division 2.

March 12, 1985.

Review Denied Oct. 8, 1985.

Whitehill, Stolkin, Karp, West, Weiss & Berger, P.C. by Elaine Hardin, Tucson, for plaintiff/appellant.

Corey & Farrell, P.C. by Barry M. Corey, Tucson, for defendant/appellee.

## OPINION

HOWARD, Judge.

Appellant filed a special action in the superior court alleging that appellee, The Civil Service Commission of the City of Tucson (Commission), had abused its discretion and exceeded its jurisdiction in the classification of her position with the City of Tucson and that she was denied a fair hearing before the Commission when one of its members refused to recuse himself. After a hearing, the trial court affirmed the decision of the Commission.

The record shows that the position of Citizen Participation Administrator was established in 1972. In January 1976 the position of Citizen Participation Director was established and Fred Acosta was appointed to that position. In 1975, when the Citizen Participation Office became a part of the city manager's office (previously it had been part of the Urban Resources Coordination), it had a budget of $229,278, which was soon raised to $302,182, and a staff of 19 employees. In July 1978 Acosta resigned from his position as Citizen Participation Director. At the time of his resignation, the budget for the office had dwindled to $94,488 and the office staff had been reduced to only four employees, including the head of the office.

At the time of Acosta's resignation there were two positions in that office. There was one position entitled Citizen Participation Director and another entitled Citizen Participation Administrator. The administrator position was not staffed at that time, and had not been staffed for one year. After Acosta's resignation, and after the reduction in paid staff from 19 to 4, appellant was offered the position of Citizen Participation Administrator, which she ultimately accepted.

On the basis of these and other facts, appellant filed a lawsuit in the United States District Court in which she alleged violation of her civil rights, specifically sex discrimination.

Finding that appellant's position with the city had been wrongfully retitled and that her salary had been reduced without the approval of the mayor and council, Judge Richard M. Bilby of the Federal District Court found that appellant was entitled to damages based on the difference between what she was being paid and what Acosta was being paid until such time as appellant's salary range was properly presented to the mayor and council for action.[1]

In response to the federal district court decision, the city hired a consulting firm to re-evaluate appellant's job. The re-evaluation resulted in a final report submitted by John Shannon to the city. Shannon stated in his report that appellant "... is assigned full first-line supervisory responsibility as well as functional management responsibility for the Citizen Participation Office." He recommended that her position continue as classified and described, in other words, as "Administrator" but that her salary be raised by five per cent so that her pay would be 20 per cent higher than that of the highest paid employee in her office.

After a hearing before the Commission at which appellant and her attorney were present and were allowed to participate, the Commission voted four to one that the revised Citizen Participation Administrator class specification be established at a salary range of 124, which was the recommendation of the outside consultant.

Appellant first contends that the trial court erred in affirming the Commission because the Commission failed to follow the written personnel department policies. We do not agree.

The written Operating Procedure of the personnel department of the city defines the word "administrator" as:

1. This case was subsequently appealed to the Ninth Circuit which first reversed the district court. It then set aside its appellate decision because it did not have jurisdiction due to the fact that Judge Bilby did not resolve all the claims that were before him.

"a title which designates the functions involved in the operation of a *division* and is primarily (80%) management of that position." (Emphasis added)

The word "director" is defined as:

"a title which designates the functions involved in the management of a *department* or such other organization as the City Manager may designate." (Emphasis added)

Since Shannon found that appellant was assigned full first-line supervisory responsibility as well as functional management responsibility for the office, appellant concludes that these findings conclusively establish that her position was that of a director and not an administrator and that the Commission acted arbitrarily and capriciously in not classifying her as a director. We are unable to agree with this conclusion. The record conclusively shows that her office was a division in the city manager's office and was not a department. In order for her to be a director, she had to manage a department or such other organization as the city manager might designate. The city manager did not designate her organization as one which required the functions of a director. Shannon's description of her job did not make her a director. The record supports the trial court's conclusion that the Commission did not act either arbitrarily or capriciously nor did it exceed its jurisdiction.

At the commencement of the Commission hearing appellant requested that Mr. Lininger, a commissioner, excuse himself for alleged bias. Appellant's attorney told the Commission that this bias came from testimony given in the federal district court case by an assistant personnel director, Jack Redavid. Redavid testified that Lininger had some pretty strong feelings about the salary and the reclassification being too high. According to him, Lininger had discussed the matter with the personnel department and was pretty well predisposed about it.[2] Appellant's attorney also read to the Civil Service Commission portions of the transcript of the federal district court case, in which Judge Bilby expressed his feeling that Lininger was biased and prejudiced.

▮ Lininger was asked by the chairman of the Commission whether he thought he could be objective when it came to a revision of the Citizen Participation Administrator class specification in review of salary level. Lininger stated that he could. The transcript of the hearing before the Commission shows that Lininger said little or nothing during the whole hearing. The superior court found that there was no showing that Lininger could not perform his functions as a member of the Commission. We agree with this conclusion. Administrative hearing officers are presumed to be fair and can only be disqualified upon a showing of actual bias. *Martin v. Superior Court*, 135 Ariz. 258, 660 P.2d 859 (1983). The mere formation of an opinion and the expression of that opinion have been held not to disqualify an officer or agency from passing upon the merits of a particular controversy. *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); see also 1 Am.Jur.2d Administrative Law § 65.

Affirmed.

LIVERMORE and HATHAWAY, JJ., concur.

---

2. Lininger was never called to testify in the federal court.