812 P.2d 1039

**James P. ELIA, D.D.S., Plaintiff–Appellant,**

v.

**ARIZONA STATE BOARD OF DENTAL EXAMINERS, Defendant–Appellee.**

No. 1 CA–CV 89–206.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 4, 1990.

Review Denied June 25, 1991.[*]

---

[*] Cameron, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Bess & Dysart, P.C. by Donald R. Kunz, Phoenix, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Fred W. Stork, III, Chief Counsel, Civil Div., and Peter D. Kushibab, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

GERBER, Judge.

This appeal challenges a decision of the Superior Court affirming disciplinary sanctions imposed against James P. Elia, D.D.S. (appellant) by the Arizona State Board of Dental Examiners (the "Board").

## FACTS

Timothy Hoffman consulted with Dr. Elia for treatment of severely eroded teeth. Elia discussed restorative options with Hoffman and suggested a procedure involving root canals, posts and crowns, the best treatment available. Hoffman could not afford this procedure. Elia then offered to fabricate an appliance ("splint") for the affected teeth.

Elia cemented the splint into place and suggested it be worn on a temporary basis. Hoffman told Elia he did not want to experience the painful seating process again and began to wear the splint permanently. Elia provided Hoffman with instructions for care of the splint and proper oral hygiene. Hoffman followed these directions but was unable to use a floss threader to clean between the units of the splint as he had been instructed.

Hoffman returned twice to Elia's office to have his teeth cleaned. Elia reiterated the importance of following the recommended oral hygiene. Hoffman continued to suffer from gingivitis, bleeding, and be-

gan to feel that food was trapped under the splint. Hoffman did not return again to Elia's office for treatment.

Over the course of his treatment by Elia, Hoffman became acquainted with Ms. Roxanne Watson, a dental assistant employed by Elia. Hoffman and Watson subsequently married.

Hoffman consulted another dentist, William Daine, D.D.S., eight months after the splint was inserted. Dr. Daine referred Hoffman to a periodontist, Dr. Louis Robertson. Robertson examined Hoffman and concluded that periodontal treatment was necessary and that restoration should involve single-unit crowns throughout the affected area. In Robertson's opinion, the splint was seated too far below the gumline, and had resulted in "inflammation, fibrosis, and symptomatic discomfort."

Hoffman filed a complaint with the Board. The Board referred the matter to an investigative committee pursuant to A.R.S. § 32–1263.02(C). The investigative committee, consisting of two dentists, performed an assessment of Elia's work, including an examination of Hoffman's mouth and the splint. Dr. Gary Gilliam, a member of the evaluation team, concluded that the splint was an ongoing hazard to Hoffman's dental health because it was loose, had inadequate embrasure spaces, was difficult to clean and caused marked gingivitis around the splint area.

The investigative committee informed Elia that it intended to deliberate regarding the findings of the clinical evaluation committee. The notice stated that the basic allegation in the complaint against him was "inadequate crown and bridge causing perio problems due to inability of patient to maintain tissue health." The notice further stated that proof of this allegation would constitute a violation of A.R.S. § 32–1201(16). That provision defines "unprofessional conduct" as "any conduct or practice which does or would constitute a danger to the health, welfare or safety of the patient or the public." A.R.S. § 32–1201(16)(n).

In response to the Board's notice of intent to conduct a deliberation meeting, counsel for Elia demanded to conduct discovery and cross-examine members of the investigative committee. The Board cancelled the deliberation meeting and the matter was scheduled for an informal interview pursuant to A.R.S. § 32–1263.02(C)(1). Elia refused to cooperate during the informal interview. The Board scheduled the matter for a formal hearing pursuant to A.R.S. § 32–1263.02(C).

The Board's investigation revealed that Watson asked Elia, her employer, to prescribe the antibiotic tetracycline for Hoffman, her husband. Watson told Elia she was suffering from a highly contagious vaginal infection and needed the prescription for her husband to prevent him from sexually contracting the infection and then reinfecting her. Elia prescribed the tetracycline. Elia did not examine or speak with Hoffman before or after he prescribed the antibiotic for him.

Watson photocopied Elia's office records regarding her husband's treatment without Elia's knowledge. Those photocopies were attached to Hoffman's complaint filed with the Board. A comparison of Elia's original records with the photocopied records revealed that Elia had made additional entries in Hoffman's chart after Watson had copied the records. Elia supplemented the records with information regarding the treatment plan, his clinical evaluations and the prescription for tetracycline.

The Board issued a complaint and notice of formal hearing with six allegations of "unprofessional conduct" pursuant to A.R.S. § 32–1201(16): (1) the treatment plan was inadequate because the splint was inappropriate for Hoffman; (2) the splint lacked adequate embrasure spaces which prevented proper oral hygiene; (3) Hoffman's teeth had been overtapered, which contributed to a gingival response; (4) the overtapering resulted in the loss of a tooth; (5) Elia's supplementation of Hoffman's records constituted false and misleading statements pursuant to A.R.S. § 32–1201(16)(*l*); and (6) Elia had prescribed tetracycline to Hoffman for other than an accepted therapeutic dental purpose.

At the formal hearing, the hearing officer prepared findings of fact and conclusions of law as follows: (1) the embrasure spaces in the splint were inadequate and the subgingival seating of the splint was improper, constituting unprofessional conduct pursuant to A.R.S. § 32–1201(16) and A.A.C. R4–11–1101; (2) the tetracycline had been prescribed for Hoffman for other than "therapeutic purposes" and thus constituted unprofessional conduct pursuant to A.R.S. § 32–1201(16)(c); and (3) the supplementations of Hoffman's dental records were meant to appear contemporaneous with the original entries, and thus were false and fraudulent, constituting unprofessional conduct pursuant to A.R.S. § 32–1201(16)(%il%i ).

The Board issued findings of fact and conclusions of law virtually identical to those prepared by the hearing officer. The Board censured Elia for prescribing the tetracycline, for supplementing Hoffman's treatment records, for fabricating the splint with the inadequate embrasure spaces and for the subgingival seating of the splint. The Board ordered Elia to pay restitution to Hoffman for the cost of the splint, an administrative penalty of $4,000.00 and to serve twelve months probation.

Elia petitioned the Board for a rehearing. The Board denied Elia's petition and affirmed the sanctions. The trial court affirmed the Board's order and dismissed Elia's action. In this appeal, Elia alleges that the allegations of unprofessional conduct were not supported by the evidence and that he was denied due process of law in the proceedings before the Board.

## UNPROFESSIONAL CONDUCT

■ The trial court's review of an administrative agency decision is limited to whether the agency's action was illegal, arbitrary, capricious or involved an abuse of discretion. *Schmitz v. Ariz. State Bd. of Dental Exam.*, 141 Ariz. 37, 684 P.2d 918 (App.1984). The trial court may not substitute its own judgment for that of the agency where factual questions and agency expertise are involved. *De Groot v. Arizona Racing Commission*, 141 Ariz. 331, 686 P.2d 1301 (App.1984). Nor may we do so. To resolve factual issues on appeal, such as those raised by Elia, this court must review the record to determine whether it contains evidence supporting the Board's decision. *Webster v. State Board of Regents*, 123 Ariz. 363, 599 P.2d 816 (App.1979). Where the facts are in conflict, we must affirm a board decision which is supported by substantial evidence. *Zavala v. Arizona State Personnel Bd.*, 159 Ariz. 256, 766 P.2d 608 (App.1988).

### Treatment Issues

The Board found that two facets of Elia's treatment of Hoffman constituted a danger to his health and were "unprofessional" pursuant to A.R.S. § 32–1201(16)(n). Elia alleges that these findings were without substantial evidence. We disagree.

■ The Board concluded the splint's embrasure spaces were too small, which prevented Hoffman from maintaining proper oral hygiene, resulting in gingivitis and bleeding as well as a feeling that food was trapped under the splint. Hoffman's failure to follow Elia's instructions for proper oral hygiene does not defeat the claim of improper treatment. The Board found the construction of small embrasure spaces violated the guidelines for assessment of clinical quality and professional performance in A.A.C. R4–11–1101. The rule states in pertinent part, "[r]estorations should exhibit contours that are in functional harmony with adjacent teeth and soft tissues, exhibiting good individual and anatomic form; no food traps or soft tissue irritation are present and design should facilitate good oral hygiene." A.A.C. R4–11–1101.

The Board based its finding upon the testimony of Dr. Gilliam, who, as part of the investigative committee of the Board, examined Hoffman and the splint. Gilliam testified that the embrasure spaces were too small for good oral hygiene. Conversely, Elia's witness, Dr. Michael D'Mura, who never examined Hoffman or the splint, testified that the embrasure spaces were ade-

quate given the poor condition of Hoffman's teeth.

Elia alleges that this apparent conflict in expert testimony means that there was insufficient evidence to conclude that the embrasure spaces were inadequate. However, Gilliam's testimony supports the Board's conclusion that the embrasure spaces were inadequate. Thus, contrary to Elia's contention, there exists evidence to support the conclusion about inadequacy of the spacing. *Sundown Imports, Inc. v. Arizona Department of Transportation*, 115 Ariz. 428, 565 P.2d 1289 (App.1977).

■ The Board also concluded Elia should not have seated the splint below the gumline, holding that the seating of the splint violated A.A.C. R4–11–1101 because the seating did not "exhibit contours in functional harmony with the tissue" and caused irritation. Substantial evidence in the record supports this conclusion. Gilliam testified that the subject margins which measure subgingival splint placement were "a little thick" and would have caused irritation.

Gilliam also testified that, although the subgingival margins were a bit thick and would have constituted a source of irritation, he felt that this was a "minor consideration." Gilliam's opinion as to whether the subgingival placement of the splint should be considered "minor" is not binding on the Board.

A.R.S. § 41–1062(A)(3) provides that the Board can use its own experience, technical competence and specialized knowledge in the evaluation of evidence, and in the formulations of its decisions. *Croft v. State Board of Dental Examiners*, 157 Ariz. 203, 755 P.2d 1191 (App.1988). In this situation the Board members could have found, based upon their collective experience, that the subgingival margins were thick enough to constitute a danger to Hoffman's health and therefore constituted unprofessional conduct, despite Gilliam's conclusion that the margin issue was a "minor consideration."

D'Mura, Elia's witness, testified the splint had to be placed some distance under the gumline in order for the splint to stay in place because Hoffman's teeth were so short, even though such placement would cause bleeding. This testimony, however, does not preclude substantial evidence supporting the contrary view held by the Board. *Sundown Imports, Inc. v. Arizona Department of Transportation*, 115 Ariz. 428, 565 P.2d 1289 (App.1977). Even Gilliam himself stated that the subgingival placement of the splint would have caused irritation.

Both Gilliam and D'Mura testified most crowns are seated under the gumlines for cosmetic purposes. Elia argues that the Board wrongfully censured him for doing what "every dentist in the world does," in seating the splint under the gumline. Evidence was presented at the hearing that placement is always a compromise of the patient's oral health and cosmetic concerns. That subgingival placement is common is irrelevant in view of the fact that the Board specifically found, based on the evidence presented, that the subgingival placement of the splint caused irritation sufficient to constitute a danger to a particular individual.

### Prescription for Tetracycline

■ The evidence is undisputed that Elia prescribed tetracycline for Hoffman at Watson's request without seeing him or speaking with him first. The Board found the prescription constituted unprofessional conduct within the meaning of A.R.S. § 32–1201(16)(c) because the tetracycline was prescribed for other than accepted dental "therapeutic purposes."

Elia alleges that this conclusion was error. Unprofessional conduct is defined in A.R.S. § 32–1201(16)(c) to include prescribing, dispensing or using drugs for other than "accepted therapeutic purposes." Elia argues that there is no requirement in A.R.S. § 32–1201(16)(c) that a dentist prescribe drugs only for an accepted *dental* therapeutic purpose. We disagree.

Watson testified she requested the tetracycline prescription for her husband to prevent him from contracting an infection from her during sexual relations and then

reinfecting her. She also told Elia that she needed the prescription so that they "wouldn't have to pay a doctor $25 or $30 for an office call just to get a prescription." Although Elia testified that he had prescribed the tetracycline to protect Hoffman's oral health, the hearing officer specifically stated that he did not find this testimony credible.

As the trier of fact, the hearing officer is in the best position to judge witness credibility. Such determinations are generally binding upon this court. *Anamax Mining Co. v. Arizona Dept. of Economic Security*, 147 Ariz. 482, 711 P.2d 621 (App.1985); *Adams v. Industrial Comm'n of Arizona*, 147 Ariz. 418, 710 P.2d 1073 (App.1985). There is no reason in the record to dispute the hearing officer's determination regarding Elia's credibility.

As to whether the tetracycline was prescribed for an accepted "therapeutic purpose" pursuant to A.R.S. § 32–1201(16)(c), we do not find under the facts of this case that the statutes on dentistry authorize a dentist to prescribe drugs to treat a sexually transmitted infection. The Board correctly concluded that the prescription was not issued for "accepted therapeutic purposes," and thus constituted unprofessional conduct.

### Supplementation of Records

■ It is undisputed that Elia supplemented Hoffman's office records after his original entries. Elia made additional entries regarding the treatment plan, his clinical evaluations and the prescription for tetracycline.

Elia testified the supplemental notations were consistent with what took place at the time the treatment was rendered. They were added because he felt that additional later information needed to be included in the records. Elia argues that because his notations did not contain any false or fraudulent information, his supplementation of Hoffman's office records cannot be construed as unprofessional conduct pursuant to A.R.S. § 32–1201(16)(%il%i).

A.R.S. § 32–1201(16)(*l*) defines unprofessional conduct" as the knowing fabrication of "any false or fraudulent statement, written or oral, in connection with the practice of dentistry." A.R.S. § 32–1201(16)(*l*) contains language sufficiently broad to encompass the manner in which statements are made, as well as their actual content, as it includes within the definition of unprofessional conduct the knowing fabrication of "*any* false or fraudulent statement, written or oral." The manner in which a statement is made can render it false and fraudulent under certain circumstances.

The Board specifically found the notations were written to appear as though they were made contemporaneously with the original entries. The Board found that the notations were false and fraudulent and constituted unprofessional conduct pursuant to A.R.S. § 32–1201(16)(*l*). In support of this conclusion, the hearing officer stated:

> [T]he later entries were designed to appear contemporaneous with such entries in order to bolster respondent's course of treatment.... The insertion of such later entries was deceptive, designed to be fraudulent in inducing the board to believe they were contemporaneously made and were false entries.

Elia's credibility was a matter within the hearing officer's discretion. *Phelps v. Industrial Comm'n of Arizona*, 155 Ariz. 501, 747 P.2d 1200 (1987); *Holding v. Industrial Comm'n of Arizona*, 139 Ariz. 548, 679 P.2d 571 (App.1984). The hearing officer could have found on the evidence that Elia's testimony was inconsistent with his notations. Under these circumstances we hold that there is evidence supporting the Board's finding of unprofessional conduct under A.R.S. § 32–1201(16)(%il%i).

### DUE PROCESS ISSUES

■ Elia also alleges that the procedures utilized by the Board in its disciplinary procedures against him resulted in a denial of procedural due process. First, he alleges that the Board "trampled" his rights by failing to enact rules governing its investigative process. We disagree.

A.R.S. § 32–1207(A)(1) requires the Board to "make rules ... for regulation of

its own conduct, for holding examinations and for regulating the practice of dentists...." A.R.S. § 41–1003 provides that "[e]ach agency shall adopt rules of practice setting forth the nature and requirements of all formal procedures available to the public." It is undisputed that the Board has not promulgated rules as it should regarding details of its disciplinary functions. This lack of rules delineating the Board's procedures, however, does not mean that Elia was denied due process of law. Promulgation of such rules is not a prerequisite to disciplinary actions by the Board nor a pre-condition to due process. *Cf. Caldwell v. Arizona State Board of Dental Examiners,* 137 Ariz. 396, 670 P.2d 1220 (App.1983).

■ Due process primarily requires that rights and property are not taken by governmental authority without notice and an opportunity for hearing. *Landgraff v. A.G. Wagner, M.D.,* 26 Ariz.App. 49, 546 P.2d 26 (1976). Elia was afforded adequate notice at each pertinent stage of the proceedings. He was represented by an attorney, and was afforded an unfettered opportunity to present his case and to call and cross-examine witnesses. We do not find any violations of these basic due process requirements notwithstanding the Board's continuing failure to adopt detailed procedural rules.

Elia argues that he was denied due process because the Board's charges against him were expanded at successive stages of the proceedings. From the record before us, it appears that the January 5, 1987 notice contained only one general allegation against Elia based upon the complaint filed with the Board by Hoffman. The Board's own investigation gradually revealed facts, not evident from Hoffman's complaint, which gave rise to the additional allegations. The formal hearing was held five months after Elia received the April 21, 1987 notice which contained the six allegations against him.

Due process assures an individual notice of the charges prior to commencement of a hearing so that the person charged has a meaningful opportunity for explanation and defense. *See Matter of Ruffalo,* 390 U.S. 544, 550–51, 88 S.Ct. 1222, 1225–26, 20 L.Ed.2d 117 (1968); *Matter of Ackel,* 155 Ariz. 34, 745 P.2d 92 (1987). Given the five-month period between the April 21, 1987 notice and the formal hearing, the notice which Elia received of the charges was sufficiently timely to cure any claimed surprise.

■ The Board initially referred this matter to its investigative committee but then set the matter for an informal interview in order to fulfill Elia's request for discovery and cross-examination. Elia also now alleges that this change in procedure violated his right to due process of law. We disagree.

A.R.S. § 32–1263.02(C) states that the Board may elect either procedure to investigate complaints. Elia's argument that the Board was bound to use the investigative committee approach after it initially elected to do so is not supported by the language of A.R.S. § 32–1263.02. It is also patently incorrect given the fact that the informal hearing procedure was initiated precisely to accommodate Elia's request for discovery and cross-examination. In any event Elia could not have been prejudiced by the change in procedure as he elected not to cooperate with the Board in the informal interview and insisted that the matter be set for formal interview.

■ Elia next argues he was denied due process because the investigative committee had no right to delegate power to the clinical evaluation committee which examined Hoffman and the splint. This argument also is erroneous. An investigative committee established pursuant to A.R.S. § 32–1263.02(C) is empowered to create a subcommittee from within its ranks to examine the patient and accumulate additional clinical data.

■ Elia next alleges the Board exceeded its statutory authority in appointing a hearing officer to preside over the formal hearing. He alleges that the Board may appoint a hearing officer to preside at administrative hearings pursuant to A.R.S. § 32–1207, but the Board may not delegate such authority in the case of formal hearings. We disagree.

A.R.S. § 32–1207(B)(4) expressly authorizes the Board to "appoint hearing officers to preside at administrative hearings...." We find that the formal hearing conducted pursuant to A.R.S. § 32–1263.02(C) and A.R.S. § 41–1003 constituted an "administrative hearing" and the use of a hearing officer was therefore appropriate.

Elia alleges that the hearing officer lacked authority to recommend findings of fact or conclusions of law because he was neither a board member nor a dentist. The language of A.R.S. § 32–1207(B)(4) does not require that the Board appoint its own members or dentists as hearing officers. Under the statute the hearing officer, even a lay person, possesses authority to hear witnesses, examine evidence, and to prepare findings of fact and conclusions of law. While these findings and conclusions are not binding upon the Board, they cannot be dismissed lightly, particularly where the Board has taken no part in the presentation of evidence. *Gregory v. Bernardi*, 125 Ill.App.3d 376, 80 Ill.Dec. 706, 465 N.E.2d 1052 (1984).

Elia further contends the Board never adequately reviewed the administrative record. The transcript of the December 11, 1987 proceedings before the Board indicates that the Board indeed studied the record supplied by the hearing officer. Every board member need not individually inspect every line of the administrative record as compiled by the hearing officer. *Megill v. Board of Regents of the State of Florida*, 541 F.2d 1073 (5th Cir.1976).

Elia next contends the hearing officers at the informal hearing and the formal hearing exhibited bias and prejudice, thereby denying him due process. He alleges that because both hearing officers were involved in investigative and adjudicative stages in prior proceedings against him, they were not capable of acting without bias and prejudice against him. We do not agree.

Administrative officers are presumed to be fair. They can only be disqualified upon an actual showing of bias or prejudice. *Maxwell v. Civil Service Commission of the City of Tucson*, 146 Ariz. 524, 707 P.2d 322 (App.1985). No such showing was made. Both hearing officers stated on the record their prior involvement on behalf of the Board and indicated that prior involvement on behalf of the Board and indicated that prior complaints against Elia would not affect their disposition of the present case. On this record we cannot find that either hearing officer exhibited bias and prejudice.

### ATTORNEY'S FEES

Elia seeks an award of attorney's fees pursuant to A.R.S. § 12–348(A)(3) and Rule 21(c), Arizona Rules of Civil Appellate Procedure. We refuse to grant Elia's request for relief from the Board's decision and hereby deny his request for attorney's fees. The trial court's decision is affirmed.

SHELLEY, P.J., and BROOKS, J., concur.