286 P.3d 784

McKESSON CORPORATION, a Delaware corporation, Plaintiff/Appellee,

v.

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM; Tom Betlach, in his capacity as Director of Arizona Health Care Cost Containment System, Defendants/Appellants.

No. 1 CA–CV 11–0457.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 6, 2012.

Quarles & Brady LLP By Roger N. Morris and Melody A. Emmert, Phoenix and Morrison & Foerster LLP By Melvin R. Goldman, Pro Hac Vice, James P. Bennett, Pro Hac Vice, Paul Flum, Pro Hac Vice, San Francisco, CA, Co–Counsel for Plaintiff/Appellee.

Hagens Berman Sobol Shapiro LLP By Robert B. Carey and Leonard W. Aragon, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

BROWN, Judge.

¶ 1 The Arizona Health Care Cost Containment System ("AHCCCS") appeals the superior court's determination that AHCCCS lacked jurisdiction and legal authority to bring an enforcement action against McKesson Corporation under Arizona's False Claims Act.[1] As explained below, because AHCCCS adopted administrative rules [2] that limited its authority to impose civil penalties only against "providers," we affirm the decision of the superior court insofar as it determined that AHCCCS did not have the legal authority to impose penalties against McKesson for the time period in which the claims at issue were submitted to AHCCCS.

## BACKGROUND

¶ 2 AHCCCS is the state agency responsible for providing health care services, including prescription drugs, to Arizona's eligible indigent population. McKesson is a wholesaler of prescription drugs. In November 2010, AHCCCS issued a Notice of Proposed Civil Monetary Penalty alleging that McKesson and another company engaged in a price inflation scheme that caused AHCCCS and its contractors to overpay pharmacies for Medicaid reimbursement claims in violation of the False Claims Act. Specifically, the notice alleged that as early as 2000, and continuing through 2009, McKesson improperly manipulated the average wholesale price of prescription drugs by 25%, resulting in the submission of false or fraudulent reimbursement claims. Based on claims submitted to AHCCCS between October 2004 and September 2006, AHCCCS sought to impose a civil penalty and assessment of more than $212 million against McKesson, pursuant to A.R.S. § 36–2918 and A.A.C. R9–22–1101.

¶ 3 In February 2011, McKesson petitioned for special action relief in the superior court, seeking a declaration that AHCCCS lacked jurisdiction and legal authority to impose penalties against McKesson. McKesson also sought a permanent injunction against AHCCCS resuming or reinitiating the penalty proceeding. The court accepted special action jurisdiction and entered a final judgment and permanent injunction in favor of McKesson, explaining as follows:

> Section 36–2918 authorizes AHCCCS to adopt rules that reach all 'persons,' but, in exercising its rulemaking authority delegated by statute, AHCCCS made the determination to limit Article 11 to 'providers.' As such, AHCCCS's use of Article 11 to impose penalties and assessments on McKesson, a non-provider, violates the [Administrative Procedures Act].

The court also held that subjecting McKesson to penalties and assessments would violate due process, because AHCCCS failed to give "fair notice" to McKesson that a non-provider was subject to an Article 11 enforcement action. AHCCCS timely appealed.

## DISCUSSION

¶ 4 To resolve this appeal, we must determine whether AHCCCS's decision to promulgate rules for enforcing A.R.S. § 36–2918 that apply only to a "provider or non-contracting provider" precludes AHCCCS from bringing an enforcement action against a non-provider. We interpret administrative rules and statutory provisions de novo. *Gutierrez v. Indus. Comm'n of Arizona,* 226 Ariz. 395, 396, ¶ 5, 249 P.3d 1095, 1096 (2011).

---

1.  *See* Ariz.Rev.Stat. ("A.R.S.") § 36–2918 (2009).

2.  *See* Ariz. Admin. Code ("A.A.C.") R9–22–1101 to –1112 (collectively known as "Article 11").

"We apply the same rules in construing both statutes and rules." *Smith v. Arizona Citizens Clean Elections Comm'n,* 212 Ariz. 407, 412, ¶ 18, 132 P.3d 1187, 1192 (2006). We read administrative rules and statutes in conjunction with each other and harmonize them whenever possible. *Thomas & King, Inc. v. City of Phoenix,* 208 Ariz. 203, 206, ¶ 9, 92 P.3d 429, 432 (App.2004). We also strive to interpret administrative rules in a manner that yields a fair and sensible meaning. *Kimble v. City of Page,* 199 Ariz. 562, 565, ¶ 19, 20 P.3d 605, 608 (App.2001).

¶ 5 Section 36–2918 provides in pertinent part:

A. A *person* may not present or cause to be presented to this state or to a contractor:

1. A claim for a medical or other item or service that the person knows or has reason to know was not provided as claimed.

2. A claim for a medical or other item or service that the person knows or has reason to know is false or fraudulent.

. . . .

B. A *person* who violates a provision of subsection A is subject, in addition to any other penalties that may be prescribed by federal or state law, to a civil penalty of not to exceed two thousand dollars for each item or service claimed and is subject to an assessment of not to exceed twice the amount claimed for each item or service.

C. *The director or the director's designee shall make the determination to assess civil penalties and is responsible for the collection of penalty and assessment amounts. The director shall adopt rules that prescribe procedures for the determination and collection of civil penalties and assessments.*

(emphasis added). The rules referenced in A.R.S. § 36–2918(C) are found in Article 11. *See* A.A.C. R9–22–1101 to –1112. During the time frame in which alleged false or fraudulent claims were submitted to AHCCCS, its enforcement rules expressly limited Article 11's scope to providers:

R9–22–1101. Basis for Civil Monetary Penalties and Assessments for Fraudulent Claims; Definitions

A. Scope. This Article applies to a *provider or non-contracting provider* who meets the conditions under this Article and who submits a claim under Medicaid ..., KidsCare ..., or the Health Care Group[.]

B. Purpose. *This Article describes the circumstances AHCCCS considers and the process that AHCCCS uses to determine the amount of a penalty, assessment, or penalty and assessment as required under A.R.S. § 36–2918.* · This Article includes the process and time-frames used by a *provider or non-contracting provider* to request a State Fair Hearing.

C. Definitions. The following definitions apply to this Article:

1. "Assessment" means a monetary amount that does not exceed twice the dollar amount claimed by the *provider or non-contracting provider* for each service.

2. "Claim" means a request for payment submitted by a *provider or non-contracted provider* for payment for a service or line item of service.

. . . .

5. "Penalty" means a monetary amount, based on the number of items of service claimed, that does not exceed two thousand dollars times the number of line items of service.

A.A.C. R9–22–1101 (eff. Sept. 11, 2004) (emphasis added).

¶ 6 AHCCCS amended and restructured Article 11 in September 2004, adding, among other things, the "scope" provision with the "provider or non-contracting provider" limitation. 10–32 Ariz. Admin. Reg. 3061 (Aug. 6, 2004). Prior versions of Article 11, in effect since 1986, did not contain a "scope" provision and applied to any "person." *See* A.A.C. R9–22–1101 (adopted eff. Oct. 1, 1986 (Supp. 86–5); amended eff. May 30, 1989 (Supp. 89–2); amended eff. Sept. 29, 1992 (Supp. 92–3)). In the Notices of Final Rulemaking accompanying the 2004 amendments to Article 11, AHCCCS stated that "the proposed rule language is intended to streamline and clarify the existing rules and process, which relate only to providers and non-con-

tracting providers." 10–32 Ariz. Admin. Reg. 3057.[3]

¶ 7 The parties do not dispute that (1) McKesson is a "person" as statutorily defined by A.R.S. § 36–2918; (2) AHCCCS's factual allegations against McKesson, if true, would support a finding that McKesson violated A.R.S. § 36–2918(A); and (3) McKesson is not a "provider or non-contracting provider" within the scope of Article 11. The relevant question, then, is whether AHCCCS's rules that apply only to a "provider or non-contracting provider" preclude the assessment of penalties against a non-provider such as McKesson.

¶ 8 AHCCCS acknowledges that the 2004 amendments narrowed the scope of Article 11, but asserts nonetheless that AHCCCS can pursue an enforcement action against a non-provider under the express terms of § 36–2918. AHCCCS argues that § 36–2918 sets forth the prohibited conduct, the persons it applies to, and the consequences for violating the statute. And, as the agency authorized to enforce the False Claims Act, AHCCCS contends that its interpretation should be entitled to deference.

¶ 9 We recognize that an administrative agency's interpretation of statutes and its own regulations is ordinarily entitled to great weight. *Capitol Castings, Inc. v. Ariz. Dep't of Econ. Sec.*, 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992). However, an agency interpretation developed in litigation is not entitled to judicial deference. *See Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1135–36 (D.C.Cir.2001); *cf. Scenic Ariz. v. City of Phoenix Bd. of Adjustment*, 228 Ariz. 419, 431, ¶ 37, 268 P.3d 370, 382 (App.2011) (declining to give judicial deference to the Arizona Department of Transportation's informal positions as to whether electronic billboards were permitted by statute). Nothing in the record before us supports the view that by adopting the 2004 rule changes, AHCCCS intended to do anything other than to limit the class of persons against whom it would seek to enforce the False Claims Act. Moreover, as a general principle of administrative law, "an agency must follow its own rules and regulations; to do otherwise is unlawful." *Clay v. Ariz. Interscholastic Ass'n*, 161 Ariz. 474, 476, 779 P.2d 349, 351 (1989) (citations omitted); *see also Tiffany ex. rel. Tiffany v. Ariz. Interscholastic Ass'n*, 151 Ariz. 134, 139, 726 P.2d 231, 236 (App. 1986) (holding that the executive board of the Arizona Interscholastic Association acted unlawfully when it failed to follow its own by-laws in considering a student's request for a waiver).

¶ 10 AHCCCS argues that the absence of rules applicable to non-providers does not preclude an enforcement action against non-providers under § 36–2918. AHCCCS asserts that because § 36–2918 expressly authorizes actions against any "person," the decision to promulgate rules covering only providers should not bar the enforcement action against McKesson because any conflict between a statute and an agency rule should be resolved in favor of the statute. We disagree.

¶ 11 As the superior court properly concluded, § 36–2918 is not self-executing. *See Carondelet Health Servs., Inc. v. AHCCCS*, 182 Ariz. 221, 228–29, 895 P.2d 133, 140–41 (App.1994) (finding that session law left to "AHCCCS's discretion the determination of why and when" certain billing factors would be adjusted; thus, the law "cannot be said to direct a 'certain course of action'"). Civil penalties and assessments do not come into play unless AHCCCS has adopted "rules that prescribe procedures for the determination and collection of civil penalties and assessments." A.R.S. § 36–2918(C). Those rules, codified in Article 11,

---

**3.** After the superior court's ruling in this matter, AHCCCS amended A.A.C. R9–22–1101. 17–52 Ariz. Admin. Reg. 2615 (eff. Feb. 4, 2012). Article 11 now provides in pertinent part: "Scope. This Article applies to prohibited acts as described under A.R.S. § 36–2918(A).... The Administration considers a person who aids and abets a prohibited act affecting any of the AHCCCS programs or Health Care Group to be engaging in a prohibited act under A.R.S. § 36–2918(A)." A.A.C. R9–22–1101(A). The rules define "person" as "an individual or entity as described under A.R.S. § 1–215," which includes corporations. A.A.C. R9–22–1101(C)(6); A.R.S. § 1–215 (Supp.2011). Because the claims at issue were submitted between October 2004 and September 2006, the 2012 amendment does not apply to this enforcement proceeding.

444

include detailed lists of aggravating and mitigating factors to be applied in determining the amount of any penalty or assessment. In its notice of proposed penalty, AHCCCS found there were no mitigating factors and several aggravating factors that led to its determination of the proposed penalty and assessment against McKesson. Thus, despite AHCCCS's assertions that it need not rely at all on Article 11 to impose a penalty, the plain language of the statute provides otherwise. Furthermore, AHCCCS relied on Article 11 here, which cuts against its argument that no rules are necessary for implementation of the False Claims Act against non-providers. *See State v. Kearney,* 206 Ariz. 547, 551, ¶ 9, 81 P.3d 338, 342 (App. 2003) (noting that the State's position on appeal was inconsistent with the actions it took in the case).

**▮** ¶ 12 Section 36–2918 applies to a "person," while AHCCCS limited the scope of Article 11 to a "provider or non-contracting provider." Unquestionably, AHCCCS could have promulgated rules in Article 11 covering all persons, as it did prior to the 2004 amendments. Section 36–2918(C) requires AHCCCS to adopt rules for determining and collecting penalties and assessments, but it contains no specific requirement that the rules AHCCCS adopts under its authority reach all persons. An agency has the discretion to draw on less than the full authority conferred by a statute, unless the legislature has expressly provided otherwise. *See, e.g., Heckler v. Chaney,* 470 U.S. 821, 837–38, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (declining to review claim that FDA may refuse to regulate drugs used for lethal injection despite statutory responsibility to regulate drugs); *Syncor Int'l Corp. v. Shalala,* 127 F.3d 90, 95 (D.C.Cir.1997) (explaining Administrative Procedure Act rulemaking was necessary to expand FDA's authority after it "made a careful, considered decision not to exercise the full extent of its regulatory authority . . . over nuclear pharmacies").

¶ 13 We also presume that when AHCCCS adopted the 2004 amendments it did so with the purpose of implementing the plain language of those amendments. *See State v. Bridgeforth,* 156 Ariz. 60, 63, 750 P.2d 3, 6

(1988) (noting the "presumption that when the legislature alters the language of a statute it intended to create a change in the existing law.") (citation omitted); *Ariz. Dep't of Revenue v. Superior Court,* 189 Ariz. 49, 52, 938 P.2d 98, 101 (App.1997) (recognizing that we interpret statutes and rules according to their plain meaning). To conclude otherwise would render the phrase "provider or non-contracting provider" meaningless. *See Marlar v. State,* 136 Ariz. 404, 411, 666 P.2d 504, 511 (App.1983) (recognizing that a regulation should be construed so that no "clause, sentence or word is rendered superfluous, void, contradictory, or insignificant"). Accordingly, based on the action taken by AHCCCS when exercising its rulemaking authority, no conflict exists between the language of § 36–2918 and Article 11.

¶ 14 AHCCCS argues that even if § 36–2918 could only be enforced through rules adopted by AHCCCS, the superior court should have remanded the matter to AHCCCS to promulgate rules to govern an enforcement action against McKesson. AHCCCS further asserts that even though it is required to adopt rules under the False Claims Act, enforcement may nonetheless be pursued against any "person" without such rules as long as AHCCCS provides procedural due process. In support, AHCCCS relies on *Caldwell v. Arizona State Board of Dental Examiners,* 137 Ariz. 396, 670 P.2d 1220 (App.1983) and *Elia v. Arizona State Board of Dental Examiners,* 168 Ariz. 221, 812 P.2d 1039 (App.1990). These cases, however, do not help AHCCCS solve the problem it created.

¶ 15 *Caldwell* and *Elia* both involved due process challenges, with the appellants arguing that the dental board's failure to promulgate procedural rules prior to initiating disciplinary actions against the appellants denied them due process. Unlike those circumstances, in this case AHCCCS did not fail to adopt statutorily required rules relating to the submission of false claims. As directed by § 36–2918(C), AHCCCS expressly adopted rules in Article 11 setting forth the "procedures for the determination and collection of civil penalties and assessments." In its discretion, AHCCCS elected to exercise

less than its full authority. *See Heckler*, 470 U.S. at 837–38, 105 S.Ct. 1649; *Syncor*, 127 F.3d at 95. Having done so, AHCCCS was required to follow the rules it promulgated. *See Clay*, 161 Ariz. at 476, 779 P.2d at 351.

¶ 16 Finally, without citation to authority, AHCCCS briefly mentions that because McKesson's allegedly fraudulent scheme began in 2001 and was largely implemented by 2003, the administrative regulation to be applied is the version of Article 11 "which was in effect at the time of McKesson's wrongful conduct, not that which may have been in effect at some point during subsequent administrative proceedings." Stated differently, AHCCCS suggests that because McKesson engaged in a scheme of improper conduct starting in 2001, McKesson violated the administrative regulations that were in effect at that time.

¶ 17 We assume for purposes of argument that McKesson violated § 36–2918(A) and Article 11 from 2001 through September 2004; however, the notice of proposed monetary penalty at issue here provides that the penalty was determined by "calculating the total number of Medicaid claims submitted to AHCCCS for adjudication from October 1, 2004 through September 30, 2006[.]" Thus, the administrative law that governs this enforcement proceeding is the law in effect at the time the *claims* associated with the alleged improper conduct were presented to AHCCCS for payment. *See* A.R.S. § 36–2918(A)(2) ("A person may not present or cause to be presented … [a] *claim* for a medical or other item or service that the person knows or has reason to know is false or fraudulent.") (emphasis added).[4] Consistent with the wording of the statute, as well as the notice of proposed penalty, we read the superior court's order as applying *only* to the period when claims were submitted between October 2004 and September 2006. We express no opinion on whether a civil penalty can be properly assessed against McKesson for claims submitted during any other time periods. Additionally, we decline to address McKesson's argument that the statute of limitations set forth in A.R.S. § 36–2918(F) would preclude AHCCCS from pursuing an enforcement action against McKesson covering a time period when Article 11 applied to non-providers.

**CONCLUSION**

¶ 18 We affirm the superior court's ruling that AHCCCS lacked the legal authority to bring this enforcement action against McKesson.

CONCURRING: MARGARET H. DOWNIE, and RANDALL M. HOWE, Judges.

---

4. Similarly, cases interpreting the Federal False Claims Act have held that the statute does not create liability for an entity's improper internal policies, but only for presentment of a claim to the government. *See, e.g., U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir.2002) ("The submission of a claim is … the *sine qua non* of a False Claims Act violation."); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir.1999) ("The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the *claim for payment*." (emphasis added) (internal quotations and citation omitted)).