188 P.2d 592

STATE ex rel. DE CONCINI, Attorney General, v. SULLIVAN.

No. 5058.

Supreme Court of Arizona.
Jan. 10, 1948.

Cunningham, Carson, Messinger & Carson, of Phoenix, for plaintiff.

John L. Sullivan, of Phoenix, in pro. per., for defendant.

PER CURIAM.

This is an original action in quo warranto filed pursuant to article 6, section 4 of the State Constitution and section 28-301, A. C. A. 1939, in the name of the State of Arizona upon the relation of Evo De Concini claiming to be the Attorney General of the State against John L. Sullivan who is alleged to be usurping, intruding into, unlawfully holding, and pretending to exercise the office of Attorney General. A citation was issued by this court directed to respondent Sullivan to answer by what warrant he claimed to exercise the office of Attorney General.

The pleadings do not present any substantial dispute as to the facts, for, while there are denials in the answer, they relate to the legal effect of facts either admitted or not specifically denied. The petition alleges in substance: (1) That on December 13, 1947, following a trial and verdicts of guilty by a jury on November 22, 1947, the respondent and then Attorney General of the State of Arizona was by the Superior Court of Graham County, Arizona, adjudged guilty on two counts of an information charging him with the crime of conspiracy to violate the gambling laws of the State of Arizona, specifically section 43-1101, and sentenced to imprisonment in the Arizona State Prison; (2) that the Governor of the State, the Honorable Sidney P. Osborn, upon being notified of the judgment of conviction advised respondent in writing that he, as Governor, considered that a vacancy had been created in the office of Attorney General by the judgment of conviction, and that he had appointed Evo De Concini to the office; (3) that the relator upon being notified of his appointment duly qualified for the office by filing the oath and bond required by law; (4) that thereafter respondent intruded himself into the office and unlawfully usurped, held, and exercised the office of Attorney General; (5) that because of many actions pending in the courts of the State wherein the Attorney General is a party, and because of the necessity that the rights of the State and the people thereof be protected, it is essential that respondent be ousted from office, and requests this court to assume original jurisdiction.

At the time of passing of judgment of conviction respondent was the duly elected, qualified, and acting Attorney General of the State of Arizona, and whose term would not expire until the first Monday in January, 1949. It is a matter of cognizable record that subsequent to the judgment of conviction a certificate of probable cause for appeal was granted, which was followed by notice of appeal to the Supreme Court, thereby execution of the judgment was stayed. Respondent admits that he makes claim to retain and hold the office of Attorney General, but denies that said claim is usurping, intruding into, or unlawfully holding said office. Respondent also challenges the applicability of the writ of quo warranto to the fact situation prevailing, and alleges that he can be removed from office only by recall or impeachment as provided in the Constitution. The impeachment provisions appear as article 8, part 2, sections 1 and 2, Arizona Constitution, and provide as follows:

"§ 1. [*Power of impeachment.*]—The house of representatives shall have the sole power of impeachment. The concurrence of a majority of all the members shall be necessary to an impeachment. All impeachments shall be tried by the senate, and, when sitting for that purpose, the senators shall be upon oath or affirmation to do justice according to law and evidence, and shall be

presided over by the chief justice of the Supreme Court. Should the chief justice be on trial, or otherwise disqualified, the senate shall elect a judge of the Supreme Court to preside."

"§ 2. [*Conviction on impeachment.*]— No person shall be convicted without a concurrence of two-thirds of the senators elected. The governor and other state and judicial officers, except justices of courts not of record, shall be liable to impeachment for high crimes, misdemeanors, or malfeasance in office, but judgment in such cases shall extend only to removal from office and disqualification to hold any office of honor, trust, or profit in the state. The party, whether convicted or acquitted, shall, nevertheless, be liable to trial and punishment according to law."

It is his contention that these provisions constitute the exclusive remedy for creating a vacancy in the office of Governor and other State and judicial offices, including the office of Attorney General.

It is the position of the relator that by provisions of section 12-404, A. C. A. 1939, a vacancy was created ·in the office of Attorney General by the conviction of respondent of offenses involving a violation of his official duties as Attorney General, which vacancy the Governor was under the duty and empowered to fill by the provisions of article 5, section 8, of the Constitution, reading as follows:

"§ 8. [*Governor to fill vacancies.*]— When any office shall, from any cause, become vacant, and no mode shall be provided by the constitution or by law for filling such vacancy, the governor shall have the power to fill such vacancy by appointment."

Sec. 12-404, supra, is the legislative provision defining vacancies. It reads:

"*Vacancy by law.*—An office shall be deemed vacant from and after the happening of either of the following events before the expiration of the term: Death of the incumbent; his insanity, when judicially determined; his resignation, and the lawful acceptance thereof; his removal from office; his ceasing to be an inhabitant of the state or, if the office be local, of the district, county, city, or precinct for which he was chosen or appointed, or within which the duties of his office are required to be discharged; his absence from the state, without permission of the legislature, beyond the period of three (3) consecutive months; his ceasing to discharge the duties of his office for the period of three (3) consecutive months, except when prevented by sickness, or when absent from the state by permission of the legislature; *his conviction of a felony, or of any offense involving a violation of his official duties;* the failure of the person elected or appointed to such office, to file his official oath or bond within the time prescribed by law; the decision of a competent tribunal declaring void his election or appointment." (Emphasis supplied.)

The action of quo warranto is authorized by section 28-301 which reads as follows:

*"Attorney-general may bring—Venue—Against whom.*—An action may be brought by the attorney-general in the name of the state upon his relation, upon his own information, or upon the verified complaint of any person, in the Supreme Court, in cases where that court has jurisdiction, or otherwise in the superior court of the county having jurisdiction, against any person who usurps, intrudes into or who unlawfully holds or exercises any public office or any franchise within this state, and he shall bring such action whenever he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised."

This statute contemplates two types of action: the first is brought in the public interest by the Attorney General to exclude one who is not entitled to the office from exercising it; the second is brought by a claimant in his private interest wherein he must show by his complaint who is entitled to the office. The judgment then determines his claim and grants damages for the usurpation. State ex rel. Sullivan v. Moore, 49 Ariz. 51, 64 P.2d 809. The action in the instant case was not brought by the relator in his private capacity to determine his right to the office but rather in the public interest to exclude the respondent.

■ Our right to take original jurisdiction has not been questioned nor could it be, for article 6, section 4 of the Constitution expressly confers it. The reasons that actuated this court to accept jurisdiction

in the case of Sullivan v. Moore, supra, are equally present here. The public business demands a prompt judicial inquiry and a final determination of the actions of the respondent in allegedly unlawfully usurping, holding, and exercising so vital an office as that of Attorney General.

■ We are directly presented with this question: Is that portion of section 12-404 which provides that a vacancy shall be deemed to exist in an office when the holder thereof is convicted of a felony, or of any offense involving a violation of his official duties, unconstitutional as in violation of sections 1 and 2, part 2, article 8 of the Constitution? The offenses for which respondent was convicted are punishable by imprisonment in the State Prison or by fine. Section 43-109 provides:

*"Crimes are either felonies or misdemeanors.*—A felony is a crime which is punishable with death or by imprisonment in the state prison; every other crime is a misdemeanor. When a crime punishable by imprisonment in a state prison is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison."

The respondent having been sentenced to prison, his offenses must be characterized as felonies.

■ The impeachment provisions of the Constitution make State and judicial

officers, except justices of courts not of record, "liable to impeachment for high crimes, misdemeanors, or malfeasance in office." The object of prosecutions of impeachment in England and the United States "is to reach high and potent offenders, such as might be presumed to escape punishment in the ordinary tribunals, either from their own extraordinary influence, or from the imperfect organization and powers of those tribunals. These prosecutions are, therefore, conducted by the representatives of the nation, in their public capacity, in the face of the nation, and upon a responsibility which is at once felt and reverenced by the whole community." Story, Const., sec. 688; State v. Buckley, 54 Ala. 599, 618. The ultimate aim of impeachment proceedings is the removal from office of the person accused. Under our Constitution a successful impeachment results in a judgment of removal from office and disqualification to hold any office of honor, trust, or profit in the State. The party against whom impeachment proceedings are had, whether convicted or acquitted, is nevertheless liable to criminal prosecution according to law. An adjudication by way of impeachment against the officer is conclusive not only in connection with the matter of the incumbency of the office but carries with it as an additional penalty the disqualification to hold any office of honor, trust, or profit in the State.

The word "impeachment" as used in the statutes and constitutions of several states has been construed to mean the removal of officers from office. 46 C.J., Officers, sec. 192. Respondent asserts the law to be that where the Constitution provides a method for the impeachment (removal) of officers that method is exclusive and the power which the legislature might otherwise be regarded as possessing is taken away. He contends that the general rule that should be accepted is stated in 43 Am.Jur., Public Officers, sec. 182, as follows:

"The Constitution of a state may place beyond the reach of hostile legislation the method and grounds for removing incumbents of public offices or of certain offices; and where the Constitution prescribes the method of removal and the causes for which public officers may be removed, the method and grounds established by this instrument are exclusive and it is beyond the power of the legislature to remove incumbents in any other manner, or for any other cause. * * *" (Citing cases.)

■■ At first blush it would seem that this general rule was approved in Holmes v. Osborn, 57 Ariz. 522, 115 P.2d 775, 782. There the Governor attempted to and did remove certain appointive officers (Industrial Commissioners) upon alleged grounds of inefficiency, neglect of duty, malfeasance, misfeasance, and nonfeasance in office. The contention of the removed officers was that they could be removed only by impeachment, and that the law authorizing the Governor to remove them for cause was in conflict with the constitutional pro-

visions relating to impeachment of state officers. With this proposition the court did not agree insofar as it pertained to appointed state officers holding offices created by legislative enactment subsequent to the adoption of the Constitution. The court held that it was contemplated in the Constitution that additional offices would be created as expediency required, and that it was within the province of the legislature to provide for the appointment and qualifications of such officers and for their removal. The court then made this comment which prompts our observation above that the holding in the Holmes' case lends support to the contention of the defendant here. We quote:

"It is true, as the petitioners contend, that the state constitution is a limitation upon the powers of the legislature, but we think no one would assert that the framers of instrument, by providing for certain named state officers and for their removal by impeachment, intended to prohibit the legislature from creating other offices thought to be necessary and in the interests of good government, and to fix the incidents of appointment and removal thereof. *The limitation on legislation in that field is that removal from state elective offices shall be by impeachment and only for the causes mentioned in the constitution.* * * *" (Emphasis supplied.)

This statement does not say that impeachment is the *only* remedy, but even if it be construed to have that effect it cannot be said to be a declaration of law of the nature of stare decisis for the reason that the question now before us was not there before the court to be decided. The sole issue in that case was whether or not appointive officers could be removed by impeachment only. It was determined that the impeachment provisions were not applicable to appointive officers. The court did not have before it the question of whether elective officials could be removed in no other manner than by impeachment or recall, hence this pronouncement was merely dictum.

Courts of last resort in several states with constitutions not dissimilar to ours have held that where the Constitution provides for removal by impeachment that remedy is exclusive. It was so held in People v. Shawver, 30 Wyo. 366, 222 P. 11. This case contains an exhaustive survey of the cases adopting this rule. Practically all of the state constitutions provide for removal by impeachment. In many of them there are legislative provisions similar to our section 12-404 declaring a vacancy to exist in an office when the holder thereof has been convicted of a felony, or any offense involving a violation of his official duties. Such legislation has been sustained upon the theory that where it is not prohibited by the Constitution it is valid and within the province of the legislature to provide that vacancies in office shall be created in addition to and otherwise than by methods prescribed in the Constitution.

356

Typical of these cases is State ex rel. Berge v. Lansing, 46 Neb. 514, 64 N.W. 1104, 1110, 35 L.R.A. 124-129, where the court held:

"The constitution (article 3, § 20) provides, 'All offices created by this constitution shall become vacant by the death of *the incumbent, by removal from the state,* resignation, conviction of a felony, impeachment, or becoming of unsound mind.' It is contended that the expression of these events as creating vacancies is the exclusion of all others, and there are a few decisions in other states lending color to the argument. It would be a sufficient answer to this contention to say that this court has always carried in view the principle that the state constitution is not to be considered as a grant of power, but that its provisions are purely restrictive, and that legislation is valid unless prohibited by the state or federal constitution. Therefore, in such cases as the present, the maxim 'Expressio unius est exclusio alterius' is not applicable, and the legislature may adopt any provision not prohibited by the constitution. State v. [Board of County Commissioners of] Lancaster County, 4 Neb. 537 [19 Am.Rep. 641]; State v. Board of Com'rs of Dodge Co., 8 Neb. 124 [30 Am. Rep. 819]; State v. Ream, 16 Neb. 681, 21 N.W. 398; Shaw v. State, 17 Neb. 334, 22 N.W. 772. To put it differently, the constitutional provision quoted creates a vacancy upon the happening of any of the events covered by the provision, and the legislature would be prohibited by that provision from enacting any law whereby such an event would not create a vacancy. But it is not prohibited from the enactment that vacancies shall be otherwise created. * * *"

The express declaration in part 1, section 1, article 4, of the Constitution of this State that "The legislative authority of the state shall be vested in the legislature, consisting of a senate and a house of representatives" includes all the legislative power of the state whose exercise is not expressly prohibited to the legislature or conferred upon some other body. "In the face of this declaration, there can be no implication of the absence or nonexistence of such power, but whoever would claim that the power does not exist in any particular case, or has been improperly exercised, must point out the provision of the Constitution which has taken it away or forbidden its exercise." Sheehan v. Scott, 145 Cal. 684, 79 P. 350, 351. This was the interpretation placed upon our Constitution by this court immediately after statehood and so declared in State v. Osborne, 14 Ariz. 185, 125 P. 884. In the recent case of Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436, 438, we again had occasion to examine this concept of our Constitution. There we said:

"The Constitution of Arizona is not, as is the Constitution of the United States, to be considered a grant of power or enabling act to the Legislature, but rather is a limitation upon the power of that body, and that 'The Legislature is vested with the

whole of the legislative power of the state, and may deal with any subject within the scope of civil government unless it is restrained by the provisions of the Constitution, and the presumption that the Legislature is acting within the Constitution holds good until it is made to appear in what particular it is violating constitutional limitations.' Macmillan Co. v. Clarke, 184 Cal. 491, 194 P. 1030, 1032, 17 A.L.R. 288. 'We do not look to the (state) Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited.' Fitts v. Superior Court of Los Angeles County, 6 Cal.2d 230, 57 P.2d 510, 512."

▆ The question then becomes whether article 8, part 2, sections 1 and 2 of our Constitution providing for impeachment of certain public officers and their removal from office constitute either directly or by implication an exclusive remedy having the effect of prohibiting the legislature from devising supplemental methods of removal such as they did by passing section 12-404. It is illogical to assume that impeachment is an exclusive remedy in the light of the history of its development. The purpose of impeachment is to serve as an *added protection to the public* against those officers who may be so powerful as to effectively block court action against themselves. It was never intended nor did it develop as a safeguard to the officer concerned.

The Constitution specifically preserves the right of trial in regular courts to officers subject to impeachment and thus specifically denies the exclusiveness of the impeachment process in regard to these officers. Article 8, part 2, section 2 states: "* * * *The party, whether convicted or acquitted, shall, nevertheless, be liable to trial and punishment according to law.*" (Emphasis supplied.)

The Constitution, by specifically preserving this second method of attack against erring officers, would, by necessary implication, preserve the right of the legislature to determine what shall be the effect of such a successful attack. In section 12-404 the legislature has determined this effect by stating that "An office shall be deemed vacant from and after * * * his conviction of a felony, or of any offense involving a violation of his official duties; * * *."

Section 12-404, in setting up the various events that would make a public office vacant at law, itself contemplates this duality of the public's remedy (in addition to the recall) against such officers by providing, as shown above, that the office is vacant after conviction by a court, and also providing that the office is vacant after the officer's "removal from office" as by impeachment or recall.

An analogous situation is portrayed in the case of Wigley v. South San Joaquin Irr. Dist., 31 Cal.App. 162, 159 P. 985. There the court issued a writ of mandamus directing the directors of an irrigation district to hold a recall election of one of its

358

members. A statute provided that "The holder of any elective office of any irrigation district may be removed or recalled at any time by the electors." St.Cal.1911, Ex. Sess., p. 135. Counsel for the board of directors took the position that the legislature, in passing the above act and extending the recall to officers of an irrigation district, acted in violation of certain provisions of the state Constitution and exceeded its powers. With reference to this contention the court said:

" * * * This conclusion is attempted to be sustained by a reference to section 18, art. 4, of the Contitution, and to section 1, art. 23. Section 18 provides for the removal of certain officers, such as Governor, judges, etc., by impeachment, and concludes with this sentence: 'All other civil officers shall be tried for misdemeanor in office in such manner as the Legislature may provide'—and section 1, art. 23, provides for the recall of certain specified officers, viz., fo: the recall of elective officers of counties, cities and counties, and cities and towns of the state, but does not, in express terms, provide for the recall of district officers. Considering these two sections of the Constitution, counsel's position may be stated as follows: Since the Constitution does not provide for the recall of district officers, but does provide that they may be removed from office after a trial and conviction of misdemeanor in office, it follows that the latter provision is exclusive, and the Legislature has no power to pass any act for their removal other than an act to provide for their removal for cause. The argument challenges the power of the state Legislature to pass the act of 1911. It must be considered, however, that, in the absence of section 1, art. 23, of the state Constitution, the Legislature would have plenary power to pass laws providing for the recall of public officers. This results from the nature and form of our state government. * * * *"

The court then concluded that section 18, article 4 of the California Constitution providing that officers may be tried for misdemeanors in office in such manner as the legislature might prescribe did not deprive the legislature of power to provide for the recall of irrigation district officers. In referring to section 1, article 23 of that Constitution providing for the recall of certain specified elective officers (but not providing for the recall of irrigation district officers) the court said it was not " * * * intended to be, a grant of power to the Legislature, so it will not be held to take from the Legislature the power it already had to pass acts for the removal of public officers, unless such intent clearly appears and is the reasonable conclusion to be drawn from the language used. It contains no language prohibiting the Legislature from passing such acts. * * * *"

The wording of our Constitution and statute, the purpose of impeachment, and common sense all indicate that the effort of both the legislature and the framers

of the Constitution was to provide complete and adequate safeguard to the public against those who breach its trust—the opposite of trying to make it more difficult to oust such officers. And it is logically sound that those officials who hold offices of public trust should be subject to closer scrutiny than private individuals whose crimes might not have such widespread effect.

■ While the point is not argued in defendant's memorandum, it is alleged in his answer that he has perfected an appeal to this court, and that a certificate of probable cause has been issued. It is our opinion that a vacancy is created the moment a judgment of conviction is entered against a public officer. No appeal or certificate of probable cause can avoid the vacancy or the necessity for appointment. We cite with approval the case of McKannay v. Horton, 151 Cal. 711, 91 P. 598, 601, 13 L.R.A.,N.S., 661, 121 Am.St.Rep. 146, in which the court said:

" * * * The only effect of an appeal and certificate of probable cause is to stay the execution of the judgment. Removal from office is not part of the judgment of conviction in cases of felony, though a consequence which flows from it, and the statute in express terms defines and thereby limits the effect of the appeal and certificate of probable cause. * * *"

To like effect see State v. Chapman, 187 Wash. 327, 60 P.2d 245, 106 A.L.R. 640; In re Obergfell, 239 N.Y. 48, 145 N.E. 323.

■ The object of the removal of a public officer for official misconduct is not to punish the officer, but to improve the public service. The public interest demands that public affairs be administered by officers upon whom rests no stigma of conviction of a felony, or of any offense involving a violation of their official duties.

■ We conclude that section 12-404 is constitutional and that by its express provisions a vacancy was created in the office of Attorney General upon the conviction of respondent, and that he now is and has been since December 13, 1947, unlawfully usurping, intruding into, and holding said office. It is the judgment of this court that respondent John L. Sullivan be and he is hereby declared excluded from the office of Attorney General for the remainder of the term ending on the first Monday of January, 1949.

STANFORD, C. J., and LA PRADE and UDALL, JJ., concur.