SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| DAVID BURNELL SMITH, a citizen and resident of the State of Arizona,<br><br>       Petitioner/Appellant,<br><br>       v.<br><br>ARIZONA CITIZENS CLEAN ELECTIONS COMMISSION, an agency of the State of Arizona; STATE OF ARIZONA, a State of the United States of America; STATE OF ARIZONA ex rel. TERRY GODDARD, ARIZONA ATTORNEY GENERAL,<br><br>       Real Parties in Interest<br>       /Appellees. | Arizona Supreme Court<br>No.  CV-06-0021-PR/A<br><br>Court of Appeals<br>Division One<br>No.  1 CA-SA 05-0292A<br><br>Maricopa County<br>Superior Court<br>No.  CV 2005-093310<br><br><br>**O P I N I O N** |

Appeal from the Superior Court in Maricopa County
Honorable Mark F. Aceto, Judge
**AFFIRMED**

Court of Appeals, Division One
Memorandum Decision (filed Jan. 19, 2006)
**AFFIRMED**

_____

CHARLES M. BREWER, LTD.                                    Phoenix
     By   David L. Abney
Attorneys for David Burnell Smith

TERRY GODDARD, ARIZONA ATTORNEY GENERAL               Phoenix
     By   Diana L. Varela, Assistant Attorney General
          Jessica Gifford Funkhouser, Special Counsel
Attorneys for Arizona Citizens Clean Elections Commission,
     State of Arizona, Terry Goddard, Arizona Attorney General

_____

**B E R C H**, Vice Chief Justice

¶1        In 2004, David Burnell Smith was elected to serve in

the Arizona State Legislature as a Representative from District 7. He chose to run as a publicly funded candidate. In return for the receipt of public funds, he and the other participating candidates each signed a form promising to adhere to the provisions of the Citizens Clean Elections Act, Ariz. Rev. Stat. ("A.R.S.") §§ 16-940 to -961 (Supp. 2005), and to the campaign finance rules promulgated by the Arizona Clean Elections Commission. *See* Ariz. Admin. Code ("A.A.C.") R2-20-215 to -228. The Citizens Clean Elections Act provides sanctions for violations of the campaign finance laws, including fines, criminal sanctions, and, for serious cases, removal from office. A.R.S. § 16-942.

¶2 Following an investigation of Smith's campaign expenditures, the Commission determined that Smith violated campaign finance rules by spending approximately seventeen percent more on his election than is permitted by law. *See* § 16-942(C). For that violation, the Commission decided that Smith should forfeit his office. This is Smith's final review of several determinations — at the administrative level, on review by the superior court, and following a decision by the court of appeals — all affirming the Commission's determination that Smith violated campaign finance laws and must leave office or concluding that Smith did not timely appeal the Commission's decision.

¶3        On January 26, 2006, this court issued an order denying Smith's request for a stay of proceedings, granting his petition for review, and affirming the judgment of the superior court.   This opinion explains our reasoning.   We have jurisdiction over this case pursuant to A.R.S. § 12-120.24 (2005) and Article 6, Section 5(3) of the Arizona Constitution.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

¶4        The factual and procedural background of this case is lengthy.   Rather than set it forth in detail here, matters will be set forth as necessary to the resolution of each claim.

## II.   DISCUSSION

### A.   Constitutional Privilege

¶5        Smith raises a preliminary matter that, if resolved in his favor, would obviate the need to address any other issue. Accordingly, we address it first.   Smith claims that this litigation cannot proceed because, as a state legislator, he enjoys a constitutional immunity to civil process during, and for fifteen days preceding, the legislative session.   This privilege is set forth in Article 4, Part 2, Section 6 of the Arizona Constitution, which provides as follows:

> Members of the Legislature shall . . . not be subject to any civil process during the session of the Legislature, nor for fifteen days next before the commencement of each session.

¶6        We construe constitutional provisions in light of the

purpose of the enactment and the "evil sought to be remedied." *Ruth v. Indus. Comm'n*, 107 Ariz. 572, 575, 490 P.2d 828, 831 (1971). Although there is little history surrounding the passage of Article 4, Part 2, Section 6,[1] this court has noted that a similar provision in the Federal Constitution was designed to avert an arrest, either criminal or civil, that would prevent a legislator from attending session. *See Yuma Greyhound Park, Inc. v. Hardy (Steiger)*, 106 Ariz. 178, 179, 472 P.2d 47, 48 (1970) (citing *Long v. Ansell*, 293 U.S. 76 (1934), discussing Article 1, § 6 of the United States Constitution); *accord State v. Beno*, 341 N.W.2d 668, 676 (Wis. 1984) (noting that the Wisconsin privilege, worded almost identically to Arizona's, is designed to ensure a legislator's availability to represent his constituents). The federal privilege provision has been described as extending to "a subpoena *ad respondendum*, *aut testificandum*, or a summons to serve on a jury" because such seizures of the person would preclude a representative from doing his public duty. Joseph Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 857 (1833).

¶**7** That rationale does not pertain here. Smith is not defending a suit brought by another. Instead, Smith has invoked

---

[1] *See* John S. Goff, THE RECORDS OF THE ARIZONA CONSTITUTIONAL CONVENTION OF 1910, 902 (1991) (noting simply that the provision was read, but reflecting no comments on it).

the jurisdiction of the courts. On January 24, 2006, for example, Smith filed a petition for review urging this court to accept jurisdiction and reverse the court of appeals' memorandum decision, which affirmed the superior court's judgment that Smith should forfeit his seat in the legislature. Had Smith not invoked the jurisdiction of the courts, the Clean Elections Commission's removal order would have become final on September 8, 2005,[2] and Smith's removal from office would have occurred more than fifteen days before the legislative session began.

¶8       A legislator may not seek the court's intercession solely for the purpose of keeping alive a case that would remove him from office, then claim immunity from participating in the very case he has brought. Having participated in the case before the Commission during his last legislative term and lost, and then having instituted suit and appeals in an attempt to overturn the administrative result, Smith cannot claim legislative immunity.

## B.   The Stay Request

¶9       Smith requested that this court stay the effect of the court of appeals' order finding that he had not properly appealed his case. *See* ARCAP 7(c) (authorizing court to enter a stay to preserve the status quo pending review of a case).

---

[2]    The Commission's order was dated August 25, 2005. As will be discussed, Smith had fourteen days from that date to appeal. *See infra* ¶¶ 22-26.

While this court has not had occasion to set forth the analytical framework for evaluating requests for stays in the appellate context, Arizona courts have applied to such stay requests the traditional criteria for the issuance of preliminary injunctions, *see Shoen v. Shoen*, 167 Ariz. 58, 63, 804 P.2d 787, 792 (App. 1991) (preliminary injunction standards); *Burton v. Celentano*, 134 Ariz. 594, 595, 658 P.2d 247, 248 (App. 1982) (same), as did the appellate court and the parties in this case. We find the construct useful and therefore adopt it.

¶10    A party seeking a stay on appeal must thus establish the following elements:

1. a strong likelihood of success on the merits;
2. irreparable harm if the stay is not granted;
3. that the harm to the requesting party outweighs the harm to the party opposing the stay; and
4. that public policy favors the granting of the stay.

*See Shoen*, 167 Ariz. at 63, 804 P.2d at 792; *Burton*, 134 Ariz. at 595, 658 P.2d at 248. The scale is not absolute, but sliding. Nor should the result turn on counting the factors that weigh on each side of the balance. Rather, "the moving party may establish either 1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and [that] 'the balance of hardships tip[s] sharply'" in favor of the moving party. *Shoen*, 167 Ariz. at 63,

804 P.2d at 792 (quoting *Justice v. Nat'l Collegiate Athletic Ass'n*, 577 F. Supp. 356, 363 (D. Ariz. 1983)). The greater and less reparable the harm, the less the showing of a strong likelihood of success on the merits need be. Conversely, if the likelihood of success on the merits is weak, the showing of irreparable harm must be stronger.

¶11        We applied these criteria to Smith's request for a stay. Because we concluded, for the reasons set forth below, that Smith would not succeed on his claims and that the judgment of the superior court should be affirmed, we denied his stay request.

**C.   The Merits**

### 1.   Removal only by impeachment or recall

¶12        Smith's primary claim is that he can be removed from office only by "impeachment or recall" and then only for the reasons set forth in the constitution. He bases his claim on Article 8, Part 2, Section 1 of the Arizona Constitution, which provides that, on vote of two-thirds of the members of the Senate, a state officer may be removed from office for "high crimes, misdemeanors, or malfeasance in office."

¶13        The argument that a state officer may be removed from office only as prescribed in the constitution was squarely raised and rejected in *State ex rel. DeConcini v. Sullivan*, 66 Ariz. 348, 355, 188 P.2d 592, 596 (1948). In *Sullivan*, this

court observed that while the constitution may limit legislative powers, unless a power is expressly or by implication precluded, the legislature retains power to act. *Id.* at 356-57, 188 P.2d at 597. The court concluded that Article 8, Part 2 does not limit the power of the legislature to devise additional methods of and causes for removal and therefore does not provide the exclusive means of removal from public office. *Id.* at 357, 188 P.2d at 598; *cf.* A.R.S. § 1-253(B) (2002) (permitting "impeachment, removal, deposition or suspension" from office for certain offenses, even if the offense does not specify removal from office as a potential penalty). If, as Smith contends, the constitutional means were exclusive, the legislature would be unable to enact laws allowing removal of one who had become mentally incompetent or physically unable to hold office. As this court noted in *Sullivan*, that constitutional provision was intended to protect the public by making it easier to remove public officers, not to protect malfeasing public servants. 66 Ariz. at 358-59, 188 P.2d at 599.

¶14 In this case, the public, acting in its legislative capacity, authorized removal from public office as a sanction for serious violations of the campaign finance laws. *See* A.R.S. § 16-942(C). Smith agreed to abide by those terms when he sought to finance his campaign with public funds. A.R.S. § 16-947(A), (B) (requiring participating candidates to file an

affidavit with the Secretary of State's Office pledging adherence to campaign finance laws). His removal was not precluded by any provision of the Arizona Constitution.

¶15    Smith counters that *Holmes v. Osborn*, 57 Ariz. 522, 115 P.2d 775 (1941), "held" that impeachment and recall are the sole means of removing elected officials from office. The language on which he relies from that case, however, is dictum, as that case dealt with the legislature's unquestioned power to provide the means for removal of members of the Industrial Commission. *Id.* at 537, 115 P.2d at 782. Moreover, the records of the Arizona Constitutional Convention suggest that the drafters of our constitution anticipated that the legislature could devise other grounds for removal. *See* John S. Goff, RECORDS OF THE CONSTITUTIONAL CONVENTION OF 1910, 921-22 (1991) (noting that "there is no need to make a provision in the constitution" for removal of *elected officials* and executive appointees because "the legislature will have the power to do that without authorization in the constitution"). Impeachment is therefore not the sole means of removal for elected officials, nor are the reasons for removal limited to those listed in Article 8, Part 2, Section 2 of the Arizona Constitution.

¶16    Smith's claim that he cannot be removed except by impeachment or recall fails.

## 2.    Failure to timely appeal

### *a.    Background*

**¶17**    The superior court held, and the court of appeals agreed, that Smith failed to timely appeal the Commission's decision that he had overspent his campaign limits and therefore must forfeit his office.   We agree that Smith failed to timely appeal.

**¶18**    Determining the procedure for review of administrative decisions involves the interpretation of rules and statutes, which we review de novo.   *Pima County v. Pima County Law Enforcement Merit Sys. Council*, 211 Ariz. 224, 227, ¶ 13, 119 P.3d 1027, 1030 (2005).   We apply the same rules in construing both statutes and rules.   *State ex rel. Romley v. Martin*, 205 Ariz. 279, 281, ¶ 6, 69 P.3d 1000, 1002 (2003).   To determine whether Smith's appeal was timely, some procedural background is necessary.

**¶19**    On March 25, 2005, following its investigation of Smith's campaign spending, the Citizens Clean Elections Commission issued an Order and Notice of Appealable Agency Action.   That preliminary order concluded that Smith had violated the Clean Elections Act and must forfeit his seat in the legislature.   The order would have been final had Smith elected to take no further action in the case.   But the order advised Smith that he could appeal "pursuant to the

- 10 -

Administrative Procedures Act," A.R.S. §§ 41-1092 to -1092.12 (2004 & Supp. 2005), within thirty days, and Smith pursued this avenue of redress by requesting a hearing before an administrative law judge ("ALJ").

¶20     On August 22, 2005, following a two-day hearing, the ALJ issued a lengthy decision concluding that the Commission had carried its burden of proving its case and recommending to the Commission that Smith's appeal be denied.  The Commission adopted that recommendation three days later, on August 25, 2005, incorporating in its Final Order the ALJ's detailed findings of fact and conclusions of law and issuing sanctions of repayment of public funds, a fine, and forfeiture of office.

¶21     Smith sought review of the August 25 order in two ways:  First, he filed a Motion for Rehearing or Review on September 23, 2005; that motion was denied on October 4. Second, on September 26, 2005, he filed a complaint for judicial review in superior court.

### b.    Waiver of fourteen-day rule

¶22     The statute providing for judicial review of Citizens Clean Election Commission rulings, A.R.S. § 16-957(B), provides that "[t]he violator has fourteen days from the date of issuance of the order assessing the penalty to appeal to the superior court."  Smith's appeal, filed September 26, was filed more than fourteen days after the Commission's August 25 order assessing

the penalty of removal from office. Smith, however, argues that for several reasons his appeal was nonetheless timely.

¶23 Smith first argues that the Commission's March 25 order waived the jurisdictional appeal time set forth in A.R.S. § 16-957(B) and "gave Representative Smith extended appellate deadlines" that became applicable five months later, on August 25, after the Commission's ruling became final. His claim is not clear, but he appears to contend that permitting him to pursue redress through the administrative process rather than requiring him to appeal the March 25 preliminary order immediately to superior court precludes the Commission and the courts from demanding timely adherence to the fourteen-day time limit imposed by A.R.S. § 16-957(B) following the final administrative determination. This argument misapprehends the administrative review structure and misconstrues the record.

¶24 The administrative rules that supplement the statutory processes for obtaining review of administrative actions by the Clean Elections Commission, A.A.C. R2-20-214 to -231, provide any person who has been administratively sanctioned the due process right to challenge the decision within the administrative structure, pursuant to the Administrative Procedures Act ("APA"), A.R.S. §§ 41-1092 to -1092.12. The March 25 order notified Smith of this right, after which Smith requested and was afforded this process. The Commission's March

notice to Smith that he could file an administrative appeal did not nullify the fourteen-day time limit for seeking judicial review once the administrative hearing process had resulted in a final administrative order. Rather, the order simply stayed the effectiveness of the Commission's order while Smith exhausted the available administrative process.

¶25 It is well settled that the time for filing an appeal, whether by appeal or by complaint for judicial review following the conclusion of the administrative process, is jurisdictional. *See Ariz. Comm'n of Agric. & Horticulture v. Jones*, 91 Ariz. 183, 187, 370 P.2d 665, 668 (1962); *Ariz. Dep't of Econ. Sec. v. Holland*, 120 Ariz. 371, 372, 586 P.2d 216, 217 (App. 1978). The Commission has no power to waive it because the failure to timely appeal "deprive[s] th[e] court of jurisdiction to review the [administrative] decision." *Holland*, 120 Ariz. at 372, 586 P.2d at 217; *see also Jones*, 91 Ariz. at 188, 370 P.2d at 669.

¶26 Smith points to no language in the Commission's March 25 order purporting to excuse the time limits of A.R.S. § 16-957(B), and we find none. The order advises Smith only that he has the right to administratively appeal the preliminary determination that he has violated campaign finance rules by invoking the procedures set forth in the Administrative Procedures Act. It confirmed the procedure that existed as a matter of law. The Commission did not waive the provisions of

A.R.S. § 16-957(B) by any language in the March 25, 2005 order.[3]

          c.    *Premature appeal*

¶27      Smith claims that the Complaint for Judicial Review he filed in superior court on September 26 should be considered a "premature" appeal that sprang to life after the Commission subsequently issued its October 4 order denying Smith's Motion for Rehearing or Review. He maintains that the appeal was timely because, while it was filed eight days before the ruling appealed from, it nonetheless came "within" fourteen days of the Commission's issuance of the order assessing the penalty.

¶28      On August 25, 2005, the Clean Elections Commission adopted the ALJ's decision and recommendation and entered the Commission's "Final Order," which assessed penalties requiring repayment of $34,625.09 to the Clean Elections Fund, imposing a civil penalty of $10,000, and requiring Smith to forfeit his public office.

¶29      Smith had the right to seek judicial review of that decision pursuant to the Judicial Review of Administrative Decisions Act ("JRADA"), A.R.S. §§ 12-901 to -914 (2003), which

---

[3]    Smith seems to confuse the right to *administrative* appeal within the administrative process pursuant to the APA, found in Title 41, with *judicial* review of the ultimate administrative order pursuant to the Judicial Review of Administrative Decisions Act ("JRADA," sometimes formerly called the Administrative Review Act), found in Title 12. A statement regarding Smith's rights under the APA did not affect later-attaching rights under the JRADA.

allows thirty-five days to file an appeal. A.R.S. § 12-904(A). The provisions of the JRADA do not apply, however, if a more definite procedure is set forth in "the act creating or conferring power on an agency or a separate act." A.R.S. § 12-902(A)(1). If more definite provisions exist, those more specific provisions control. *Id.; see also Ariz. State Tax Comm'n v. Phelps Dodge Corp.*, 116 Ariz. 175, 177, 568 P.2d 1073, 1075 (1977) (observing that specific statutes displace general statutes). In this case, the Clean Elections Act itself contains a definite term for appeals: A.R.S. § 16-957(B) requires that appeals be taken no later than "fourteen days from the date of issuance of the order assessing the penalty." The time to appeal is jurisdictional; any appeal not filed within the stated period is barred. A.R.S. § 12-902(B).

¶30 The penalty-assessing order in this case was issued on August 25, 2005. Smith's appeal should therefore have been filed on or before September 8. Smith filed nothing between August 25 and September 8.

¶31 On September 23, however, Smith filed a Motion for Rehearing or Review. He did so pursuant to an invitation in the last paragraph of the Commission's August 25 "Final Order," which contains the following directions to the aggrieved party:

> Pursuant to A.R.S. § 41-1092.09, any party that is aggrieved by this Order may file with the Commission, not later than thirty (30) days after service of this

- 15 -

> decision, a written motion for rehearing or review . . . . In the alternative, any party may file an action for judicial review in the Superior Court of Arizona, pursuant to A.R.S. § 16-957(B) and A.A.C. R2-20-228.

Under the JRADA, a motion for rehearing tolls the time to appeal. *See* A.R.S. § 12-901(2) (providing that no administrative order is final until any motion for rehearing or review has been decided). Smith therefore claims that his time to appeal was extended until the disposition of the rehearing motion.

¶32    Smith's argument fails because A.R.S. § 16-957(B) expressly requires that an appeal must be taken no later than "fourteen days from the date of issuance of the order assessing the penalty." In this case, the penalty-assessing order was issued on August 25, 2005, and Smith did not file an action within fourteen days of that date. Moreover, when that time expired, Smith had not yet filed his motion for rehearing or review. His time to appeal therefore lapsed.

¶33    Even if section 12-901(2) applied, however, and would have extended the time to appeal if a *timely* motion for rehearing had been filed, Smith's motion for rehearing was filed too late to extend the time to appeal. Because the JRADA time provisions do not control when an administrative agency's statute provides a definite appeal time, it follows that the Citizens Clean Elections Act's fourteen-day appeal provision for

- 16 -

seeking judicial review cannot be extended by a rehearing motion filed after the fourteen days have expired. The Commission may, by its August 25 order, have bound itself to consider Smith's rehearing motion, but it could not have conferred jurisdiction on the superior court to consider an untimely appeal.

¶34     We recognize that Smith might have been misled by the language in the Commission's August 25 Final Order regarding the filing of a motion for rehearing or review. But even assuming that he was misled by the August 25 order to believe that a motion for rehearing or review filed after the appeal time has run can stay the effect of an otherwise final order, the fact remains that even after the Commission denied the motion on October 4, 2005, Smith took no action in the fourteen days following that date to appeal his case. The record reflects that Smith did nothing until he amended his September 26 complaint on October 28, twenty-four days after the latest possible appealable order. Thus his appeal time expired.

¶35     If, on the other hand, the August 25 order is viewed as the final "order assessing a civil penalty," Smith filed his September 26 complaint thirty-one days after the August 25 order and his amended complaint, dated October 28, 2005, more than two months after the August 25 order. Under any state of the facts, Smith failed to timely appeal the Commission's order, and it

became final.[4] This court is not free to ignore the clear statutory language of A.R.S. § 16-957(B) and create jurisdiction in the superior courts where the legislature has provided to the contrary.

**¶36** Smith seeks to avoid the consequences of the late filing of his appeal by arguing that the September 26 complaint was timely because it was "within" fourteen days of the October 4 order denying rehearing or review. Section 16-957(B), however, does not require that a notice of appeal be filed "within" a certain number of days of a ruling; it says that the "violator has fourteen days *from* the date of issuance of the order assessing the penalty to appeal." *Id.* (emphasis added). "From" means "after." Until an order has been entered, there can be no appeal. *See* A.R.S. § 12-909 (requiring complaint in appeal from an administrative decision to contain a statement of the findings and *decision* sought to be reviewed).

**¶37** Smith asserts that *Barassi v. Matison* holds that an appellate court may exercise jurisdiction over a premature appeal if the appellant displayed an intent to appeal, appellees

---

[4] For the reasons discussed *supra* ¶¶ 31-35, we encourage the Commission to revise its form to avert any possible confusion in future cases. In this case, because Smith did not file his complaint within thirty days of any relevant order and would not have prevailed in any event on his claim that he could be removed only by impeachment or recall, *see supra* ¶¶ 12-16, he suffered no prejudice from any confusion that might have been engendered by language in the Commission's order.

were not prejudiced, and the appeal was only mistakenly filed early. 130 Ariz. 418, 636 P.2d 1200 (1981). *Barassi*, however, creates only a limited exception to the final judgment rule that allows a notice of appeal to be filed after the trial court has made its final decision, but before it has entered a formal judgment, if no decision of the court could change and the only remaining task is merely ministerial. *Compare id.* at 422, 636 P.2d at 1204 (notice filed after issuance of minute entry but before entry of the order), *and Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, 106, ¶ 16, 993 P.2d 1066, 1070 (App. 1999) (notice filed after court issued unsigned minute entry, but before clerk entered the judgment), *with Baumann v. Tuton*, 180 Ariz. 370, 372, 884 P.2d 256, 258 (App. 1994) (holding that notice of appeal filed while a motion for a new trial was pending in the trial court did not confer jurisdiction on the appellate court).

¶**38**     Smith does not fall under the *Barassi* exception. Before filing his complaint for judicial review, he had requested that the Commission review his case or, in the alternative, grant him a new hearing. These are substantive matters requiring the discretion of the decision-maker. They are not ministerial tasks. We noted in *Barassi* that appellate courts should dismiss a case for lack of jurisdiction while such a motion was still pending in the trial court. *Barassi*, 130

Ariz. at 422, 636 P.2d at 1204.[5]  Smith's reliance on *Barassi* is thus unavailing.

¶39     Beyond this limited exception, Arizona courts have consistently and with good reason held that premature notices of appeal are ineffective because they disrupt court processes. *Baumann*, 180 Ariz. at 372, 884 P.2d at 258.  The better practice is to give litigants "the opportunity to persuade the trial court of its error so that the trial court's ruling on a pending motion may cure any error and obviate the necessity for an appeal."  *Id.* (citation omitted); *see also*, *e.g.*, *Flagstaff Vending Co. v. City of Flagstaff*, 118 Ariz. 556, 561, 578 P.2d 985, 990 (1978).  Requiring timely notices of appeals following entry of final judgments also prevents two courts from assuming jurisdiction and acting at the same time.  *See Clifton Power Corp. v. Fed. Energy Reg. Comm'n*, 294 F.3d 108, 110 (D.C. Cir. 2002).  Sound reasons thus support the rule that one may appeal only from a final judgment.

¶40     In short, an appeal will lie only from a final administrative order.  Any person who fails to seek review "within the time and in the manner provided in this article . . . *shall be barred* from obtaining judicial review of

---

[5]     Because we conclude that *Barassi* does not apply to Smith's situation, we do not consider his arguments that he meets the further requirements of *Barassi* that he displayed an intent to appeal, that the Appellees were not prejudiced, and that the notice of appeal was only mistakenly filed prematurely.

the decision." A.R.S. § 12-902(B) (emphasis added). In concluding that Smith's action was barred, the superior court and court of appeals simply followed established law. Even under the most charitable interpretation of the record, Smith's appeal was untimely.

### 3. Jury trial on quo warranto claim

**¶41** Smith next claims that the Arizona Constitution guarantees him the right to a jury trial on the Attorney General's request for a writ of quo warranto to remove him from office. We review such legal questions de novo. *See US West Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 201 Ariz. 242, 244, ¶ 17, 34 P.3d 351, 353 (2001).

**¶42** The Attorney General is authorized to bring a quo warranto action to oust from office "any person who usurps, intrudes into or unlawfully holds or exercises any public office . . . within the state." A.R.S. § 12-2041(A) (2003). On October 20, 2005, sixteen days after the Commission denied Smith's request for a rehearing, after the time for filing a complaint for judicial review of the Commission's final administrative decision had run, the Attorney General filed a petition for a writ of quo warranto to have Smith removed from his public office. At that time, the administrative review process was final. The Commission's findings of fact were

- 21 -

conclusive, as was the Commission's legal determination that Smith must forfeit his office.

¶43	In response to the Attorney General's complaint, Smith asserted a right to a jury trial pursuant to Article 2, Section 23 of the Arizona Constitution, which guarantees that "[t]he right of trial by jury shall remain inviolate."  This court recently observed, however, that Arizona's jury trial provision merely preserves a right to jury trial if such a right existed at common law; it does not create a right where none existed before.  *See Derendal v. Griffith*, 209 Ariz. 416, 419, ¶ 8, 104 P.3d 147, 150 (2005).  As the court of appeals correctly concluded, that right has never extended to civil cases that turn on uncontested facts.  *Smith v. Ariz. Citizens Clean Elections Comm'n*, 1-CA-SA 05-0292A, slip op. ¶¶ 65, 67-68 (Ariz. App. Jan. 19, 2006) (mem. decision); *see also K.B. v. State Farm Fire & Cas. Co.*, 189 Ariz. 263, 268, 941 P.2d 1288, 1293 (App. 1997) (stating that the rules of civil procedure do not require jury trial if no facts are in dispute).

¶44	In this case, we must resolve only whether Smith timely appealed, a matter controlled by law.  *See* A.R.S. § 16-957(B).  As a matter of law, when the deadline passed without Smith having filed a timely complaint for judicial review, he lost his right to appeal.  *See State v. Dawson*, 164 Ariz. 278, 280, 792 P.2d 741, 743 (1990).  Because no fact question arises

from these circumstances, there is no right to a jury trial. *See Preston v. Denkins*, 94 Ariz. 214, 221, 382 P.2d 686, 690 (1963). While contested facts might arise if we were determining whether Smith overspent, Smith's failure to timely appeal removes that question from the case.

¶45 Smith cites *State ex rel. Bullard v. Jones*, 15 Ariz. 215, 222, 137 P. 544, 547 (1914), in support of his quest for a jury trial, incorrectly stating that this court held that one is entitled to a jury trial in quo warranto proceedings. More correctly, the court observed, in dictum, that "*issues of fact arising in quo warranto proceedings were triable by jury.*" *Id.* (emphasis added) (quoting II BAILEY ON HABEAS CORPUS § 328). That statement is correct. But, as noted, there are no facts extant here for a jury to decide.

¶46 Smith's demand for a jury trial therefore fails.

### 4. Declaratory judgment action as an independent lawsuit

¶47 Smith next claims that his September 26 complaint should stand on its own as a self-sufficient lawsuit raising constitutional challenges to the Citizens Clean Elections Act that are independent of his challenges to the Commission's rulings against him. These claims, he asserts, are not subject to the fourteen-day time limit imposed by A.R.S. § 16-957(B).

¶48 To the contrary, a party may not use a complaint for

declaratory relief as a substitute for a timely complaint for judicial review of an administrative order. Smith was required to raise all of his challenges to the Commission's actions and his related constitutional claims in a timely complaint for judicial review under the JRADA. *See Hurst v. Bisbee Unified Sch. Dist. No. Two*, 125 Ariz. 72, 75, 607 P.2d 391, 397 (App. 1979) (stating that constitutional challenges to an administrative act must be raised through appeal of the final agency decision); *see also Thielking v. Kirschner*, 176 Ariz. 154, 156, 859 P.2d 777, 779 (App. 1993) (noting that "[a] party . . . cannot substitute a declaratory relief action for a timely appeal" of an administrative decision).

¶49     The reasons for requiring challenges to administrative actions to be raised in appeals from agency decisions rather than in separate declaratory judgment actions parallel those for requiring notices of appeals to be timely filed following an agency's final decision:  cases should proceed in only one forum at a time, and administrative decisions should become final on an identifiable date.  If independent collateral challenges to the constitutionality of the underlying statutes were allowed, agency decisions would not be final until the time for filing declaratory judgment actions has run.  *Id.*  The appropriate method for raising such claims is a timely complaint for judicial relief filed pursuant to the JRADA.

¶50    Smith's untimely complaint therefore does not survive as an independent lawsuit on the merits of this claim or any other of his substantive claims.

### III.    CONCLUSION

¶51    The issues Smith has raised are not novel nor, in the circumstances of this case, is Smith shielded by legislative immunity.    The record shows that Smith was afforded all appropriate process in the administrative proceedings, and he simply failed to timely pursue review of the Commission's Final Order.

¶52    We therefore grant the Petition for Review, but deny relief.    We affirm the judgment of the superior court and the memorandum decision of the court of appeals.

_____
Rebecca White Berch, Vice Chief Justice

CONCURRING:

_____
Ruth V. McGregor, Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice