IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, *Appellee*,

*v.*

HEALTH CHOICE ARIZONA, ARIZONA HEALTH CARE COST
CONTAINMENT SYSTEM, an agency of the State of Arizona, and JAMI
SNYDER, Director of the Arizona Health Care Cost Containment System,
*Appellants.*

No. 1 CA-CV 20-0545
FILED 7-28-2022

---

Appeal from the Superior Court in Maricopa County
No. LC2019-000241-001
The Honorable Sigmund G. Popko, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Snell & Wilmer LLP, Phoenix
By Robert Kethcart, Derek Flint
*Counsel for Appellants, Health Choice*

Johnston Law Offices PLC, Phoenix
By Logan T. Johnston, III
*Counsel for Appellants, AHCCCS, Director*

Holland & Hart LLP, Salt Lake City, UT
By Cory A. Talbot
*Counsel for Appellee*

---

**OPINION**

Acting Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge David D. Weinzweig and Judge Cynthia J. Bailey joined.

---

**B R O W N**, Judge:

¶1 The Arizona Health Care Cost Containment System ("AHCCCS") denied medical services claims submitted by University Medical Center of Southern Nevada ("UMC"), finding that UMC "failed to submit a timely and properly labeled 'final' claim" to Health Choice Arizona, Inc. ("Health Choice"). The superior court reversed the Director's decision. AHCCCS, its Director (Jami Snyder), and Health Choice (collectively "Appellants" except as noted) now challenge the court's ruling. Because Appellants rely on a theory for denying the claims that was not properly conveyed to UMC, and the claims were timely submitted, we affirm.

**BACKGROUND**

¶2 UMC, a Nevada hospital, provided inpatient medical care to a patient insured by Health Choice, an AHCCCS health insurance contractor, from June 2016 to January 2017. Appellants do not dispute that the services UMC provided during the patient's hospital stay were medically necessary. Under A.R.S. § 36-2904(G), UMC had six months from the patient's discharge to submit its initial claim for payment to Health Choice; a "clean" claim had to be submitted within 12 months of discharge.

¶3 In March 2017, UMC submitted to Health Choice three claims covering separate time periods for the patient's hospital stay, totaling over $2 million. Unbeknownst to UMC, the claims were incorrectly coded as "interim," rather than "final," claims. According to the AHCCCS Fee-for-Service Provider Billing Manual ("Billing Manual"), an interim claim is only submitted during a patient's stay, while a final claim must be submitted upon the patient's discharge.[1] Billing Manual, at 48. Because the patient

---

[1] We take judicial notice of the Billing Manual, which is available at https://www.azahcccs.gov/PlansProviders/Downloads/FFSProviderMa

had been discharged, UMC should have labeled its claim using code "111," to confirm it was a final claim, instead of "112, 113, or 114" (codes for "interim" claims).

¶4 Health Choice denied the first two claims, explaining one was "untimely" and the other because it billed "more than 30 days for room and board." Health Choice asserted it never received the third claim, although according to UMC all three claims were in a single envelope. UMC reached out to Health Choice for assistance in resubmitting its claim, but its representative declined to give any advice.

¶5 Several weeks later, UMC resubmitted its claims ("Aggregate Claim"), which included the entire hospital stay broken down into 30-day increments. Health Choice also denied this claim as "untimely," and UMC submitted a claim dispute. UMC then received two identical notices of "unclean claims," which stated that Health Choice was returning the claims as unprocessed based on "missing revenue codes." Neither denial listed a claim number or specified which services were missing revenue codes.

¶6 On August 21, 2017, Health Choice issued another denial notice, explaining the "issue presented" with the Aggregate Claim was "timely filing" under § 36-2904(G). Health Choice stated it was "unable to process [the] claim as billed" and informed UMC it needed to "submit a corrected claim billing all dates of service and charges . . . on one claim form." On October 12, UMC submitted what it purported to be a claim correction, but when it contacted Health Choice in December about the October submittal, a representative for Health Choice told UMC the August 21, 2017 denial was "final" and it does not accept second level appeals. In July 2018, UMC appealed to AHCCCS, explaining in part that Health Choice provided inconsistent reasons for denying its claims. The next month, UMC formally requested a hearing.

¶7 The parties stipulated that the only issue to be decided was the timeliness of UMC's claims. An administrative law judge ("ALJ") conducted the oral argument hearing, at which Health Choice argued it denied UMC's claims because they were incorrectly coded as *interim*, rather than *final*, claims. Health Choice asserted that UMC "would have had to file a single claim for all the dates of service coded as a final claim within six months from the date of discharge to be considered a timely claim" and

nual/MasterFFSManual.pdf. *See State v. Rojers*, 216 Ariz. 555, 560–61, ¶ 26 (App. 2007) (recognizing that a court may take judicial notice of an agency's published manuals); Ariz. R. Evid. 201(b)(2).

3

"if there were issues with a timely claim, [UMC] could have corrected it to make it a clean claim." UMC countered that this theory had not been raised previously, and it was entitled to proper notice of the reasons for its denial. By this time, the 12-month deadline for UMC to submit a corrected clean claim had passed. *See* A.R.S. § 36-2904(G).

¶8 The ALJ granted UMC's appeal, finding in part that the initial denial of claims failed to properly inform UMC that "the actual issue with the claims was that they were interim claims filed after the patient had been discharged." The ALJ further noted that the various reasons provided by Health Choice in denying its claims failed to alert UMC of the real error—incorrect coding—in time for it to submit a timely clean claim. The ALJ concluded that AHCCCS has a due process obligation to provide the basis for denying claims to give providers a chance to make corrections "to obtain payment for medically necessary services provided in good faith."

¶9 Health Choice appealed to the Director, who reversed. The Director concluded that by improperly coding its claims as "interim," UMC failed to "submit a timely and properly labeled 'final' claim" in compliance with the Billing Manual. UMC moved for reconsideration, asserting it could not "be held responsible for failing to correct errors that were never raised during the statutory time frame to correct such errors." The motion was denied.

¶10 UMC appealed the Director's decision to the superior court. In its briefing, UMC argued in part that "[a] decision in favor of Health Choice would not only be contrary to the law, . . . it would also incentivize contractors to withhold deficiencies in claims to increase their profitability under the AHCCCS system," citing the ALJ's explanation that UMC "is entitled to due process" and "notice is at the very foundation of that right."

¶11 The superior court reversed, finding the Director's decision was contrary to law. The court reasoned in part that (1) UMC submitted all of its claims before July 5, 2017, as required by § 36-2904(G), and (2) although UMC's claims were incorrectly coded, the error did not render the claims untimely because § 36-2904(G) does not require initial submissions of a claim to be error-free. Appellants timely appealed, and we have jurisdiction under A.R.S. §§ 12-2101(A)(1) and 12-913.

## DISCUSSION

### A.     Standard of Review

**¶12**          The superior court must affirm an agency action unless it is "contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion."  A.R.S. § 12-910(F).  We apply the same principle when we review the superior court's ruling affirming an administrative decision.  *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶ 12 (App. 2009).

**¶13**          Appellants argue the superior court applied the incorrect standard of review because it failed to afford proper deference to the Director's decision.  Relying on well-established caselaw, *see, e.g.*, *Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430, ¶ 13 (App. 2007), Appellants assert that a court may not substitute its judgment for the agency's decision on factual issues or matters that involve agency expertise.  According to Appellants, the superior court should have deferred to the Director's decision because the agency "is a clear subject-matter expert on the coding and categorization of claims."

**¶14**          Despite the complexity of medical billing procedures, the cases Appellants rely on for judicial deference, or *Chevron* deference, are generally no longer applicable in this area of the law.  *See Indus. Comm'n of Ariz. Labor Dep't v. Indus. Comm'n*, __ Ariz. __, __, ¶ 10, 72 Ariz. Cases Dig. 20 (App. June 16, 2022) ("This argument sounds like Chevron deference, which died under Arizona law in 2018." (citing A.R.S. § 12-910(F))).  As mandated by the legislature, the superior court needed to "decide all questions of law, including the interpretation of a constitutional or statutory provision or a rule adopted by an agency, without deference to any previous determination that may have been made on the question by the agency."  *See* A.R.S. § 12-910(F); *Silver v. Pueblo Del Sol Water Co.*, 244 Ariz. 553, 561, ¶ 28 (2018) (explaining that the 2018 amendment of § 12-910(F) prohibits courts from deferring to agencies' interpretations of law, but noting an exception when the legislature adopts "an agency's interpretation of a term of art").  This court has the same obligation.

**¶15**          Appellants also question UMC's reliance on the ALJ's factual findings, asserting that when the Director rejects or modifies the ALJ's decision, only the Director's decision is entitled to deference.  *See Smith v. Ariz. Long Term Care Sys.*, 207 Ariz. 217, 220, ¶ 15 (App. 2004).  Appellants are mistaken.

¶16 First, as the ALJ noted, the parties stipulated that the only issue to be decided in the administrative appeal was timeliness, and the parties proceeded without an evidentiary hearing because the facts were essentially undisputed. Second, Appellants have not challenged any of the ALJ's factual findings, either in the superior court or in their opening brief on appeal. We therefore have no reason to question those findings. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) ("Opening briefs must present and address significant arguments, supported by authority that set forth the appellant's position on the issue in question."); *see also* ARCAP 13(a) (outlining requirements for opening briefs).

## B. Stipulation and Waiver

¶17 Appellants argue the Director properly denied UMC's claims because it failed to submit a properly labeled final claim in accordance with AHCCCS rules and the Billing Manual. We reject Appellants' attempts to (1) distance themselves from Health Choice's decision to deny UMC's claims based on timeliness, and (2) expand the sole legal question Health Choice agreed to litigate.

¶18 A stipulation is defined as "an agreement, admission or concession made in a judicial proceeding by the parties . . . for the purpose, ordinarily, of avoiding delay, trouble and expense." *See Harsh Bldg. Co. v. Bialac*, 22 Ariz. App. 591, 593 (1975) (citation and quotation omitted). Generally, parties are bound by their stipulations unless relieved by the court. *Id.* Before conducting the hearing, the ALJ held a prehearing conference in which both parties stipulated the only issue for the hearing was the "timeliness of [UMC's] claim." The parties also agreed to file prehearing briefing on the issue. UMC filed a prehearing brief, but Health Choice did not. Given the stipulation, the ALJ presumably decided the dispute based on the documents and legal analysis provided by UMC. Thus, Appellants cannot legitimately complain that the superior court confined its review of UMC's appeal to whether the claims were timely submitted.

¶19 Even assuming, however, the stipulation did not strictly limit Health Choice to the timeliness issue, Health Choice failed to preserve its coding error theory because it was not raised in any meaningful way in the administrative proceeding such that UMC could reasonably anticipate that theory as a reason for denial of its claims. *See DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 340 (App. 1984) (recognizing that generally, failure to raise an issue before an administrative tribunal precludes judicial review of that issue unless it is jurisdictional).

¶20　　　　In her decision, the Director found that UMC failed to comply with the Billing Manual when it submitted claims coded as "interim" after the patient's date of discharge. AHCCCS regulations require interim claims to be submitted during the inpatient stay, then voided and resubmitted as final claims after discharge. *See* Ariz. Admin. Code ("A.A.C.") R9-22-712.76. The parties do not dispute that each of UMC's claims were incorrectly coded as "interim" rather than "final." Rather, Appellants contend that UMC's claims were properly denied as untimely, because by incorrectly coding its claims as interim, UMC failed to submit a "final" clean claim within the period required by § 36-2904(G).

¶21　　　　UMC does not dispute that its claims were incorrectly coded, but it contends the coding error was not the reason Health Choice gave for denying its claims until it was too late to submit a corrected clean claim. After UMC's initial submissions, Health Choice gave conflicting reasons for denying its claims: timeliness, billing more than 30 days on one form, and missing revenue codes. After these claims were rejected, UMC tried to follow Health Choice's directives by submitting the Aggregate Claim, breaking its claim down into 30-day increments. But these efforts were futile, as the real error related to a coding error that Health Choice had not referenced in its denial notices.

¶22　　　　Health Choice sent the denial notice at the heart of this dispute in August 2017. In its letter, Health Choice stated UMC's claims were *untimely*, citing § 36-2904(G). It also invited UMC to submit a "corrected claim billing all dates of service and charges . . . on one claim form." Later, however, Health Choice told UMC the earlier denial was "final." At the ALJ hearing, Health Choice raised the coding error for the first time, and the Director relied on that assertion in finding that UMC did not follow the Billing Manual in submitting its claim. As explained below, we conclude the Director erred by denying UMC's claims based on a coding error because Health Choice waived its ability to defend against UMC's appeal on that ground.[2]

---

[2]　　　In their reply brief, Appellants contend that UMC was notified its claims were improperly labeled as "interim" claims as shown by the billing contractor's call log notes. Because Appellants raised this contention for the first time in their reply brief, it is waived. *See Cavallo v. Phoenix Health Plans, Inc.*, 250 Ariz. 525, 536, ¶ 42 n.3 (App. 2021) (arguments first raised in a reply brief are generally waived).

¶23 Appellants argue that Health Choice was not required to specifically state its reasons for denial. But A.A.C. R9-34-405(C)(2) requires a denial notice to include the "factual and legal basis for the decision." They concede the denial "did not cite the rule specific to interim claims" or the relevant Billing Manual provisions on which the Director relied, but they argue they satisfied the requirement by citing § 36-2904(G). By merely telling UMC its claims were untimely, even though they were filed within the six-month statutory deadline, Health Choice did not adequately state the factual and legal basis for denial. It therefore waived the right to later justify denial of the claims based on improper coding. *Cf. Jones v. Cochise Cnty.*, 218 Ariz. 372, 378–80, ¶¶ 21–27 (App. 2008) (finding waiver "as a matter of law when a party fails to assert a deficiency . . . until after litigating the claim on its merits").

¶24 Moreover, notice of denial is an essential step in an administrative proceeding because it frames how the appeal will be addressed by the claimant and the decision-makers. As noted, an AHCCCS health insurance contractor must provide notice of the factual and legal basis for its denial. *See* A.A.C. R9-34-405(C)(2). The logical purpose of that requirement is to give providers a reasonable opportunity to address issues that would allow correction of deficiencies in the submitted claims. It cannot be the case that an insurer may rely on one ground for denial in its initial notice and then change to a different ground in the appeal proceeding when it is too late for the provider to address the newly identified claim problem.

¶25 It is undisputed that Health Choice denied the claims in August 2017 because they were untimely, not because they were improperly coded. As such, UMC could not reasonably be expected to address the coding error as part of its administrative appeal. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (recognizing that due process includes the ability to effectively challenge "incorrect or misleading factual premises or misapplication of rules or policies to the facts of particular cases"); *see also Vincent v. E. Shore Markets*, 970 A.2d 160, 163–64 (Del. 2009) (noting the administrative process is governed by fundamental fairness, including "fair notice of the scope of the proceedings and adherence of the agency to the stated scope of the proceedings"); *Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479 (Iowa 2001) (noting the benchmark for whether an agency comported with due process is fundamental fairness).

¶26 Appellants also contend that UMC did not submit a clean claim before the 12-month deadline; however, Health Choice waived this argument by raising it for the first time at the ALJ hearing after (1) denying

UMC's initial claims as untimely, (2) failing to note any coding errors, and (3) then stipulating that timeliness was the only issue to be adjudicated at the ALJ hearing.

¶27            Finally, Appellants argue the Director cannot have abused her discretion by requiring compliance with the relevant statutes and regulations.  But that argument ignores Health Choice's failure to meet its own regulatory obligation to state an adequate basis for denying a claim, so that medically necessary claims are not unfairly denied.  *See* A.A.C. R9-34-405(C)(2).  Given that omission, Appellants could not assert a different basis for denying the claim after the deadline to correct claims had passed.  Because the Director's decision relied on the coding error to uphold denial of UMC's claims, it was contrary to law.  *See Goldberg*, 397 U.S. at 255, 271 (explaining that a decision-maker's ruling about eligibility for public assistance benefits "must rest solely on the legal rules and evidence adduced at the hearing").

### C.      Timeliness of Claims

¶28            The deadline for submitting claims for medical services to AHCCCS health insurance contractors is established by § 36-2904(G):

> [AHCCCS or its contractors] shall not pay claims for system covered services that are initially submitted more than six months after the date of service for which payment is claimed . . . or that are submitted as clean claims more than twelve months after the date of service for which payment is claimed[.]

The statute does not define "claim" but defines the "date of service" as the date of discharge for a hospital patient and "submitted" as the date AHCCCS or its contractor received the claim.  A.R.S. § 36-2904(G)(2), (3).  A "clean claim" is defined as one that "may be processed without obtaining additional information from the subcontracted provider."  A.R.S. § 36-2904(G)(1).  Because the patient here was discharged on January 5, 2017, the deadline for submitting an initial claim was July 5, and a clean claim was due January 5, 2018.

¶29            Appellants challenge the superior court's finding that UMC "initially submitted" its claims in a timely manner.  They do not argue UMC's claims were not submitted before the six-month deadline required by § 36-2904(G), instead, they suggest the statute required submission of an error-free final claim within that period.  They also argue the claims were untimely because they were not "final" claims and the superior court

9

improperly substituted its judgment for that of the agency on this matter of agency expertise. It is undisputed the claims were incorrectly coded as interim claims and not final claims. Appellants explain there is a significant difference in how final and interim claims are reimbursed. That too, was not disputed; no agency expertise was necessary. Regardless, we cannot consider such expertise in interpreting the provisions of law governing this dispute. *Supra*, ¶ 14.

¶30        Appellants argue the statute necessarily requires an error-free final claim. Timeliness involves the interpretation of § 36-2904(G), which we review de novo. *See McKesson Corp. v. Ariz. Health Care Cost Containment Sys.*, 230 Ariz. 440, 441, ¶ 4 (App. 2012). When interpreting a statute, this court's objective "is to effectuate the legislature's intent," and the "best indicator of that intent is the statute's plain language." *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480, ¶ 8 (2018).

¶31        The superior court explained that "medical billing claims are highly technical and complex and sometimes require supplementation. . . . The legislature recognized that complexity by requiring that the statutory time limits would be measured from the provider's initial claim and not the most complete and comprehensive one." Under the plain language of § 36-2904(G), a claimant may submit a "clean claim" within 12 months after the date of service. A.R.S. § 36-2904(G)(1). The Billing Manual tracks the statute, allowing a provider to correct and resubmit a claim that is "originally received within the 6-month time frame." Billing Manual, at 48, 149. Thus, we concur with the superior court's conclusion that § 36-2904(G) anticipates that *initial* claims need not be 100% accurate; otherwise, the "clean claim" provision has no meaning.

¶32        Appellants contend nonetheless that the Billing Manual, which UMC must follow, requires error-free submissions. Chapter 4 of the Billing Manual states that "[c]laims for services must be legible and submitted on the correct form for the type of service(s) billed. Claims that are not legible or that are not submitted on the correct form will be returned to providers without being processed." Billing Manual, at 47. But Health Choice did not deny the claim as illegible or as submitted on the incorrect form; nor did its denial notice cite the relevant Billing Manual provision. It cannot now cite this provision of the Billing Manual post hoc to support

its denial.[3] Given this resolution, we do not address UMC's contention that Health Choice treated the claims as final.

¶33　　　　Applying the plain language of § 36-2904(G), initial claims for medical services need not be error-free when initially submitted because the health care provider has another six months to ensure the claim is "clean," meaning it "may be processed without obtaining additional information." A.R.S. § 36-2904(G)(1); *see also* Billing Manual, at 48. Thus, UMC timely submitted its claims within the initial six-month period, and they did not have to be error-free.

### D.　　Attorneys' Fees and Costs

¶34　　　　UMC requests an award of attorneys' fees and costs under A.R.S. § 12-348(A)(2), which states that the prevailing party in an appeal from an agency decision is entitled to attorneys' fees and expenses incurred on appeal and in the agency proceeding. *See Sharpe v. Ariz. Health Care Cost Containment Sys.*, 220 Ariz. 488, 500, ¶ 44 (App. 2009). Because UMC prevailed on appeal, we grant its request subject to compliance with ARCAP 21.

### CONCLUSION

¶35　　　　We affirm the superior court's order vacating the Director's decision.



AMY M. WOOD • Clerk of the Court
FILED:　　JT

---

3　　　　For the first time on appeal, Appellants cite A.R.S. § 36-2903.01(G)(4), which states that "a hospital bill is considered received for purposes of this paragraph on initial receipt of the legible, error-free claim . . . ." Even assuming this was a valid reason to deny the claim, it was not the reason Health Choice gave for denying the claim until it was too late for UMC to correct the error. Moreover, Health Choice did not rely on this statute in the administrative proceeding, or in the superior court, to justify denying UMC's claims. Thus, it is waived. *See DeGroot*, 141 Ariz. at 340.